MINOS D. MILLER, Jr., Judge pro tem.
This suit was filed by petitioners-appel-lees, Malcolm A. Coco, and Marsiglia Insurance Agency, Inc., seeking $1,380.50 from defendants-appellants Lucille M. Son-iat, Theodore P. Soniat, Louis G. Soniat, Elise L. Soniat and Eugene M. Soniat. This sum of money represented 6% per annum interest on $60,000.00 for a certain period, and was placed in escrow when the parties were unable to agree that the maker of the note had the right to stop the accrual of interest by the prepayment of a portion of an installment of the note.
On April 30, 1959, in an authentic act, the plaintiffs bought a large tract of land from defendants for $300,000.00. Plaintiffs paid $60,000.00 cash and gave a promissory note for the balance secured by a vendor’s lien on the property conveyed. The $240,000.00 note provided for 6% per annum interest until paid, and was payable in three equal annual installments.
In the act of sale and vendor’s lien, one thousand front feet of the land conveyed was released free and clear of the vendor’s lien. It was further agreed in the April 30, 1959 act that an additional one thousand front feet could be released from the vendor’s lien upon the payment of $60,000.00 to the defendants and that any such payment for the partial releases would be applied against the next annual installment and the note reduced by a like amount.
*433 On September IS, 1959, plaintiffs paid the defendants $60,000.00 cash and obtained a partial release of an additional 1,000 front feet. An act of partial cancellation was passed before a notary and the note was paraphed for identification therewith, reducing its principal to $180,000.00.
On February 15, 1960, plaintiffs in an authentic act of sale and assumption of the mortgage sold their interest in the land to a third party. At that time there arose the question of how much interest was then due. Plaintiffs contended that they only owed 6% interest on $240,000.00 from April 30, 1959, until September 14, 1959 and 6% interest on'$180,000.00 from September 15, 1959 to February 15, 1960, or a total of $10,100.00. Defendants contended that interest was owed on the entire $240,000.00 for the entire period and claimed that $11,-480.50 was due. It was agreed that plaintiffs would pay defendants $10,100.00 and place the balance claimed by defendants, $1,380.50, in escrow pending the outcome of this case.
The facts are not in dispute. All parties agree that the matter was properly submitted on a motion for summary judgment. The trial court concluded that the plaintiffs were not obligated to pay interest on the $60,000.00 installment beyond the date defendants received that payment and defendants have appealed.
The authentic act of sale executed April 30, 1959 contained the following provisions:
“The holder and all future holders of the note described herein agree that the purchasers or their heirs and assigns shall have a right to release from the mortgage and vendor’s lien herein granted, portions of 1,000 feet measured along the right of way as stated in the description above, by a depth to the westerly side line of the property above described. The purchasers shall have the option of locating the 1,000 feet to be released.
“The price to be paid upon the release of 1,000 feet shall be the sum of $60,000.00 and any payment for the release of any portion of ground shall be considered as part payment of the next annual installment due on the note described herein * * * ” (Emphasis added.)
The note which was paraphed to agree with the authentic act of sale and vendor’s lien expressly provided for “interest at six per cent per annum from date until paid.” (Emphasis added)
Relying on In re Liquidation of Hibernia Bank and Trust Company, 189 La. 813, 180 So. 646, defendants argue that the maker of a note has no right to pay the same before maturity without the consent of the holder. That case holds that the maker of a note cannot prepay the note unless the holder agrees to let him do so. However, there the note was not identified with an authentic act, and the note did not provide for prepayment. Here the note was paraphed “Ne Varietur” for identification with an authentic act which specifically allows prepayment and provides for partial releases. The note itself provides for interest only “until paid.”
Appellants have presented an interesting argument in their brief. They contend that:
“ * * ^ it is obvious that a specific date was established by contract for payment of each installment. It was to the purchaser’s advantage that the release clause was drawn, otherwise, except and until the installment due date of April 30th was reached, no release or portions of the tract could be obtained. ‘Release’ and ‘Prepayment’ do not have the same meaning. What then was to be done with the money paid to get release of footage? Had the mortgagees wanted to apply same against the debt itself, they would have insisted on a phrase to the effect that the payment made for the release of any portion of ground should be considered *434 prepayment toward the indebtedness, and thus the retirement of the debt would carry with it the retirement of the interest accessory thereto; or, had the provision merely recited that the installments were payable ‘on or before April 30th’, appellees position as to prepayment would have merit. State ex rel. Elliott et al. v. Ratzburg, 215 La. 295, 40 So.2d 295 [395]; Art. 2052 R.C.C.”
Appellant continues his argument:
“The court must consider the provision as it is found in the contract. It then becomes readily obvious that, in exchange for the release clause, mortgagees wanted the money so paid imputed to the next annual installment and that the money so paid would be considered as paid there against as of the date and when that installment occurred.
“To point up this fact, one need only ask this question — if appellees’ position is correct, and the mortgagors paid off the entire indebtedness before the first installment ever became due, would any interest be due the mortgagees thereafter?
“The answer must be ‘yes’ because the clause itself reads that the release payment ‘shall be considered as part payment for the next annual installment due on the note described herein.’ Thus annual installment dates are recognized by plaintiffs-appellees and defendants-appellants as due dates — and if the principal had been completely paid by way of obtaining releases of footage, nevertheless the interest would be due on the installment on its due date to the same extent as if the money had not been paid. To rule otherwise would serve to ignore the clear and explicit language of the contract.”
While this argument is persuasive, we do not subscribe to it. Instead of concluding as appellant argues that it was to the purchaser’s advantage that the release clause was drawn, we believe that it was to the mutual advantage of both parties. While the purchasers were thereby assured of a method of obtaining partial releases from the vendor’s lien, so also were the vendors given a method of receiving an earlier payment of the credit portion of the sale.
We agree that it would have been better for the parties to have more particularly spelled out the intention of the parties with regard to the effect of prior payments on the accrual of interest. However, we must take the note and accompanying sale and vendor’s lien as we find them. These two instruments clearly provide for prior payments of the installment obligation, and that interest is due only “until paid.”
We cannot agree that the hypothet submitted by appellant must be answered in the affirmative. Taking the provisions of both the note and the sale and vendor’s lien, it is our conclusion that while annual installment dates are recognized, the provision for prior payments supersedes these provisions. To accept appellants’ theory would, we believe, lead to an untenable result. For their theory would have us hold that interest on the entire $240,000.00 principal would not stop running on the annual installment dates, but would continue to accrue until the due date of the final installment, April 30, 1962. We hold that the instruments executed by the parties do not permit such an interpretation.
Appellees have not answered the appeal, but have suggested by brief that they should receive interest at the rate of 5% per annum from the date of judicial demand. The judgment of the trial court did not make such an award. LSA-C.C.P. Art. 2133 requires that appellee answer the appeal when he desires to have the judgment “ * * * modified, revised, or reversed in part * *
For these reasons, the judgment of the trial court is affirmed, all costs to be paid by appellant.
Judgment affirmed.