**Opinion issued May 29, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00460-CV

————————————

**GENERAL METAL FABRICATING CORPORATION, GMF LEASING INC., AND ARNOLD CURRY, Appellants**

**V.**

**JOHN STERGIOU AND MAIN MARINE REPAIR AND INDUSTRIAL CLEANING CO., Appellees**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2000-00900**

---

## OPINION ON REHEARING[1]

This is an agreed interlocutory appeal[2] of two summary judgment orders: one concluding that a Rule 11 agreement executed by appellants/cross-appellees—Arnold Curry, General Metal Fabricating Corporation, and GMF Leasing, Inc. (collectively, the GMF Companies)—and appellees/cross-appellants—John Stergiou and Main Marine Repair and Industrial Cleaning Company (collectively, Stergiou)—was an enforceable settlement agreement and the other finding that the Rule 11 agreement did not confer the right to prepay future payments owed thereunder. Stergiou appealed the first order on the issue of enforceability, and the GMF Companies appealed the second order on the issue of prepayment. We affirm both summary judgment orders.

## Background

Stergiou and the GMF Companies have been embroiled in litigation over the ownership of certain shares of the GMF Companies' stock for more than a decade. This case has been tried, appealed, reversed and remanded, and tried again. *See Stergiou v. Gen. Metal Fabricating Corp.*, 123 S.W.3d 1 (Tex. App.—Houston [1st

---

[1] The GMF Companies have moved for en banc reconsideration of our September 17, 2013 opinion. The panel grants rehearing, withdraws its September 17, 2013, opinion and judgment, and issues this opinion and judgment in their place. We dismiss the motion for en banc reconsideration as moot.

[2] *See* Act of May 27, 2005, 79th Leg., R.S., ch. 1051, § 1, 2005 TEX. GEN. LAWS 3512, 3513 (amended 2011, 2013) (current version at Tex. CIV. PRAC. & REM. CODE § 51.014(d) (West Supp. 2011)).

Dist.] 2003, pet. denied); *see also Gen. Metal Fabricating, Inc. v. Stergiou*, No. 01–08–00921–CV, 2009 WL 3673112, at *1 (Tex. App.—Houston [1st Dist.] Nov. 5, 2009, no pet.) (mem. op.).

While the jury deliberated during the second trial, Stergiou announced to the trial court that the parties had reached an "agreement which has been written down and signed by counsel." Not content to rely solely on the written settlement agreement, however, Stergiou's counsel asked to put the settlement terms on the record, thereby invoking the protection of Rule 11 of the Rules of Civil Procedure for agreements "made in open court and entered of record." TEX. R. CIV. P. 11. The trial court agreed but first instructed the parties—who were sitting in the courtroom when the settlement agreement was announced—to "listen intently while these terms are dictated into the record because I will swear you in and I will confirm that you are seeking my approval of this proposal." After Stergiou's counsel read the Rule 11 agreement on the record, the trial court inquired of counsel for each party whether the terms reflected "the totality" of their agreement. Both counsel replied that it did. The trial court then reminded each party that they were under oath and asked whether they had consulted with counsel regarding the terms and "implication" of the "proposed settlement," understood it, approved it, and "request[ed] the court to enter and approve" it. To each question, the parties answered affirmatively. Neither party indicated that the agreement was contingent

3

upon the execution of other documents nor requested that the trial court delay acceptance of the agreement or verdict until other documents could be drafted and executed. The trial court announced that, "based upon the understanding of counsel as dictated into the record, based upon the request of the respective parties to this proceeding," it approved the settlement.

The specific details of the Rule 11 agreement were contingent upon the jury's answers. If the jury found in favor of the GMF Companies, Stergiou would assign all of the stock at issue to Curry and the parties would execute a mutual release of all claims. If the jury found in Stergiou's favor, however, the GMF Companies would pay Stergiou $300,000 for the return of the stock. Payment would be in the form of a promissory note, with a $20,000 down payment being due "on or before May 3, 2006" and, on the first day of each month, "[c]ommencing on June 1, 2006," an "installment of $4,000.00 of principal and interest [would be] due and payable until the Note ha[d] been paid in full."

The note would be "secured by a first lien Deed of Trust and Security Agreement covering all furniture, fixtures, equipment, receivables (from the ordinary course of business), inventory, and real property owned by the GMF Companies known [as] (the White Buildings and the empty lot) (excluding the four lots the 'Blue Building' resides upon and the 'Blue Building') of General Metal Fabrication, Inc. and GMF Leasing, Inc." The parties agreed "to execute all

documents necessary to effectuate [their] agreement including all financing statements and deed(s) of trust" and to file a joint notice of non-suit with prejudice within ten days of the trial court's acceptance of the jury's verdict.

The jury returned a verdict for Stergiou. Although drafts of the additional documents contemplated by the Rule 11 agreement (i.e., the promissory note, the deeds of trust, the security agreements, and the financing statements) were circulated between them, the GMF Companies and Stergiou did not agree on the specific terms to be included in those documents. The agreed deadline for dismissing the case pursuant to the settlement was twice extended to allow the parties additional time to agree on the additional documents, but the additional documents were never consummated. The GMF Companies eventually tendered to Stergiou an executed motion to dismiss the lawsuit, one cashier's check in the amount of $20,000 for the down payment required by their settlement, and a second cashier's check for the remaining $280,000 owed. Stergiou rejected the tender and moved for entry of judgment on the jury's verdict.

After the trial court entered judgment on the verdict, the parties continued to dispute the terms and effect of the Rule 11 agreement. They sought to resolve their dispute by competing summary judgment motions. The first set of summary judgment motions concerned the enforceability of the Rule 11 agreement. The GMF Companies contended the Rule 11 agreement was an enforceable contract;

Stergiou contended it was not. The second set of summary judgment motions addressed the issue of prepayment. The GMF Companies asked the trial court to find that Curry could pay the entire amount owed under the Rule 11 agreement at once; Stergiou asked the trial court to require Curry to make monthly installment payments. After the trial court determined that the Rule 11 agreement was enforceable but did not permit prepayment of the full amount owed, the parties agreed to this interlocutory appeal to resolve the controlling questions of law.

Both the trial court's order permitting this interlocutory appeal and the parties' joint notice of appeal raise two issues: (1) whether the Rule 11 agreement is an enforceable agreement and (2) whether Curry has the right to prepay his debt under the Rule 11 agreement.

## Standard of Review

Our review of a summary judgment is de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Under the traditional summary judgment standard, the movant must show that no genuine issue of material fact exists and judgment should be rendered as a matter of law. TEX. R. CIV. P. 166a(c); *City of Galveston*, 196 S.W.3d at 221. We view all evidence in a light favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *City of Galveston*,

196 S.W.3d at 221. When both parties move for summary judgment and the trial court grants one motion and denies the other, we consider both motions, their evidence, and their issues, and we may render the judgment that the trial court should have rendered. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *City of Galveston*, 196 S.W.3d at 221.

**Enforceability of the Rule 11 Agreement**

In his sole issue on appeal, Stergiou challenges the trial court's determination that the Rule 11 agreement was enforceable. He asserts three reasons why the trial court erred: (1) he and the GMF Companies never achieved anything more than an "agreement to agree," (2) the trial court could not order compliance with the agreement because its terms are too indefinite, and (3) the agreement does not satisfy the statute of frauds.[3] Finding these reasons unpersuasive, we hold that the Rule 11 agreement was enforceable and the trial court did not err in rendering summary judgment against Stergiou on this issue.

**1.    The Rule 11 agreement is not a mere agreement to agree**

The Rule 11 agreement required the parties to execute additional documents: a promissory note, deed of trust, security agreement, and any necessary financing statements. Stergiou argues in his first sub-issue that, because the Rule 11

---

[3]    Although Stergiou frames his appeal as raising a single issue challenging the trial court's enforceability ruling, we consider each of the reasons he asserts for error as a separate sub-issue in the order set out above.

agreement does not supply any information as to the specific terms of those documents (e.g., information with respect to any right or obligation to inspect, insure, maintain, or repair the collateral, the notice and cure periods in the event of default, and any right of or prohibition against prepayment), it fails for lack of essential terms and is nothing more than an unenforceable "agreement to agree" as a matter of law. In the alternative, Stergiou asserts that there is a fact issue as to whether the execution of the additional documents was a condition precedent to the formation of a binding Rule 11 agreement.

The GMF Companies respond that the Rule 11 agreement is enforceable because, at its core, the agreement is a settlement containing all terms necessary to resolve the gravamen of the parties' dispute, and the parties unequivocally indicated their intent to be bound by it when they affirmatively testified that they agreed to its terms and asked the trial court to approve it, twice extended the deadline for dismissing the case, and attempted to negotiate the terms of the additional documents. According to the GMF Companies, that the Rule 11 agreement contemplates the execution of additional, more formal documents at a later date does not preclude its enforcement.

### a. The parties agreed as to all essential terms

Contract law governs settlement agreements made in open court pursuant to Rule 11. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). The issue of

8

whether a Rule 11 settlement agreement fails for lack of essential terms is "a question of law to be determined by the court, unless there is ambiguity or unless surrounding facts and circumstances demonstrate a factual issue as to an agreement." *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) (enforceability of settlement agreement is question of law); *Southern v. Goetting*, 353 S.W.3d 295, 300 (Tex. App.—El Paso 2011, pet. denied); *Martin v. Martin*, 326 S.W.3d 741, 746 (Tex. App.—Texarkana 2010, pet. denied) ("The question of whether an agreement is an unenforceable agreement to agree is a question of law, not a question for the jury.").

A binding settlement may exist when parties agree upon some terms, understanding them to be an agreement, and leave other terms to be made later. *Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App.—San Antonio 2002, pet. denied). When an agreement leaves essential (or material)[4] matters open

---

[4] Some courts refer to material and essential terms interchangeably. *See, e.g.*, *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("Under Texas law, essential *or* material terms are those that parties would reasonably regard as vitally important elements of their bargain.") (emphasis added). Others refer to an agreement on the material terms rather than the essential terms. *See, e.g.*, *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (Rule 11 agreement must be "complete within itself in every material detail"); *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 767 (Tex. App.—El Paso 2004, no pet.); *John Wood Grp. USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 19 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). We make no distinction between essential and material terms for purposes of this appeal.

9

for future negotiation and those negotiations are unsuccessful, however, the agreement "is not binding upon the parties and merely constitutes an agreement to agree." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000); *see Mattlage v. Mattlage*, 243 S.W.3d 763, 769 (Tex. App.—Waco 2007, pet. denied) ("If an essential term is left open for future negotiation, 'there is nothing more than an unenforceable agreement to agree[.]'"); *cf. E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App.—El Paso 2007, no pet.) ("Where the parties have intended to conclude a bargain, the agreement's silence as to non-essential, or collateral, matters is not fatal."); *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 766 (Tex. App.—El Paso 2004, no pet.) (same); *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 29 S.W.3d 291, 300 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (same). Essential terms are those terms that the parties "would reasonably regard as vitally important elements of their bargain." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.).[5] While Texas courts favor validating

---

[5] This Court derived its definition of "essential terms" from the following statement by the United States Court of Appeals for the Fifth Circuit in *Neeley v. Bankers Trust Co. of Tex.*, 757 F.2d 621 (5th Cir. 1985):

> [W]hether a promise or other term forms an essential part of an agreement depends primarily upon the intent of the parties. Thus, an "essential" promise denotes one that the parties reasonably regarded, at the time of contracting, as a vitally important ingredient in their bargain. Failure to fulfill such a promise, in other words, would seriously frustrate the expectations of one or more of the parties as to

transactions rather than voiding them, a court may not create a contract where none exists and generally may not add, alter, or eliminate essential terms.[6] *See Kelly*, 128 S.W.3d at 766; *see also T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992) (observing that courts cannot supply material contract terms); *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 274 (Tex. App.—Dallas 2012, pet. filed) ("Although Texas courts favor validating contracts, we may not create one where none exists."); *Univ. Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ) (observing that jury cannot supply essential contract terms).

Like most settlement agreements, the Rule 11 agreement here included essential terms for the payment of money in exchange for the performance of some

---

what would constitute sufficient performance of the contract as a whole.

*Id.* at 628; *see also Goetting*, 353 S.W.3d at 300 (stating that term is essential "if, when contracting, the parties would reasonably regard it as a vitally important element of the bargain"); *Domingo v. Mitchell*, 257 S.W.3d 34, 40−41 (Tex. App.—Amarillo 2008, pet. denied).

[6] Courts have noted, however, occasions in which an agreement may be upheld by supplying missing terms, such as implying a reasonable price. *See Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966); *see also Crest Ridge Constr. Grp., Inc. v. Newcourt Inc.*, 78 F.3d 146, 152 (5th Cir. 1996) (Benavides, J., concurring) ("Industry custom can fill in missing terms of a contract or determine the meaning of an agreement"); *Tex. Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 830 (Tex. App.—Houston [14th Dist.] 1994) (observing that, in certain situations, court may uphold agreement by supplying missing terms but may not create a contract where none exists or interject or eliminate essential terms), *rev'd on other grounds*, 958 S.W.2d 17 (Tex. 1997).

act: Stergiou would return his shares of the GMF Companies' stock, the GMF Companies would pay $300,000, and together the parties would dismiss the lawsuit with prejudice. *See Padilla*, 907 S.W.2d at 460–61 (noting that material terms of Rule 11 settlement agreement include payment and release of claims); *see also CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App.—Fort Worth 1999, no pet.) (holding settlement agreement that included terms of payment and statement that parties would execute mutual releases contained all material terms). The Rule 11 agreement further detailed when the stock would be returned ("upon payment of the $20,000 down payment . . . and the execution of all documents necessary to provide the security described therein"), how and when the money would be paid (in the form of a "promissory note" with "$20,000 of principal . . . paid on or before May 3, 2006" and monthly installments of $4,000 thereafter), the interest that would accrue ("6.5% per annum"), and the nature of the collateral ("all furniture, fixtures, equipment, receivables (from the ordinary course of business), inventory, and real property owned by the GMF Companies known [as] (the White Buildings and the empty lot) (excluding the four lots the 'Blue Building' resides upon and the 'Blue Building')"). *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221 (noting that material terms of contract to loan money are loan amount, maturity date, interest rate, and repayment terms). We acknowledge that the Rule 11 agreement required the parties to execute a

promissory note, a deed of trust, a security agreement, and a financing statement, and that, as an affidavit included in Stergiou's summary judgment evidence suggests, the "forms" for those documents include certain standard provisions for things like collateral descriptions; defaults; inspection rights; insurance, maintenance, and repair of collateral; and prepayment of the debt. However, to the extent these particular provisions are missing from the Rule 11 agreement, the cases on which Stergiou primarily relies do not persuade us that the parties intended those provisions to be "vitally important elements of their bargain."[7] *See Potcinske*, 245 S.W.3d at 531.

In *Martin*, two brothers had a dispute over the management of their closely-held corporation. 326 S.W.3d at 743. In an effort to settle their dispute over "corporate control," the brothers reached a "settlement agreement" that, among other things, required them to negotiate a shareholder agreement. *Id.* at 743–44. They never agreed as to the terms of the shareholder agreement. The court of appeals concluded that their settlement was not an enforceable agreement because

---

[7] We do not agree that all of the "standard" terms noted by Stergiou's real estate expert were missing from the Rule 11 agreement. For instance, Stergiou complains that the Rule 11 agreement does not identify the specific personal and real property that is collateral, but the agreement does. It specifically identified the security as being "all furniture, fixtures, equipment, receivables (from the ordinary course of business), inventory, and real property owned by the GMF Companies known [as] (the White Buildings and the empty lot) (excluding the four lots the 'Blue Building' resides upon and the 'Blue Building')."

the to-be-negotiated shareholder agreement "would be the foundational document of [the company] and would define the [brothers'] rights vis-à-vis each other and [the company]." *Id.* at 754. Here, the additional documents do not have the same "foundational" importance to the underlying dispute. The essence of the Rule 11 agreement is the GMF Companies' promise to pay Stergiou $300,000 in exchange for the return of the GMF Companies' stock and the dismissal of the lawsuit. Although the Rule 11 agreement requires the GMF Companies to make installment payments for a number of years, it does not require Stergiou to have a relationship with the GMF Companies akin to the parties in *Martin*, who continued to be involved in the operation of the same closely-held corporation.

In *DKH Homes, LP v. Kilgo*, No. 03–10–00656–CV, 2011 WL 1811435 (Tex. App.—Austin May 11, 2011, no pet.) (mem. op.), a homebuilder alleged that the Kilgos failed to comply with a contractual obligation to build a new home. 2011 WL 1811435, at *1. The court of appeals determined that the parties' agreement did not include all terms essential to a contract for the construction of a new home. *Id.* at *3 (noting appellant's acknowledgement that agreement lacked several elements it considered essential to contract for construction of home). The agreement did not sufficiently define the undertaking, such as the size of the house contemplated, the price of the house on a per-square-foot or other basis, or the time for completing construction. *Id.* Stergiou argues that, like the specifications for the

construction of a home in *Kilgo*, a security agreement is absolutely necessary to define the parties' undertaking here. Two terms for security are included in the Rule 11 agreement—the identity of the collateral and the obligation that the security agreement would provide Stergiou with a first lien. Certainly the detailed terms of a security agreement may be essential in some agreements to make future payments, but that cannot be said to be always true. Whether a term is essential should be determined on a case-by-case basis. *T.O. Stanley Boot Co.*, 847 S.W.2d at 221; *see also Potcinske*, 245 S.W.3d at 531 (observing that "different considerations come into play when determining the materiality of a finance provision in each context"). In this case, the security agreement was less significant, as shown by the GMF Companies' attempt to prepay the entire loan. Thus, we disagree that the terms Stergiou describes as essential—i.e., those terms describing the parties' obligations to insure, maintain, and repair the collateral, the notice and cure periods for default, and the right of prepayment—actually are essential to define the undertaking in the Rule 11 agreement to pay for the return of Stergiou's stock in the GMF Companies.

This case is more analogous to *Montanaro v. Montanaro*, 946 S.W.2d 428 (Tex. App.—Corpus Christi 1997, no writ) and *Sadeghi v. Gang*, 270 S.W.3d 773 (Tex. App.—Dallas 2008, no pet.). *Montanaro* was a suit for an accounting, dissolution of a family-owned partnership, fraud, and breach of fiduciary duties.

15

946 S.W.2d at 429. The parties agreed on the general terms of their settlement, including payment obligations and the release of claims. *Id.* The payment obligations were to be secured by a to-be-drafted promissory note, but despite having exchanged drafts, the parties could not agree on the promissory note's terms. *Id.* at 431. The court of appeals concluded that the record nevertheless established the essential terms of a settlement agreement because, like Stergiou and the GMF Companies, the parties agreed as to the exact amount of the payments and the period over which they were to be made. *Id.* "Additional terms regarding overdue, or post-maturity, interest and acceleration upon default were not necessary to enable the parties to comply with the terms of the note, or the underlying settlement agreement . . . ." *Id.*

The court of appeals in *Sadeghi* reversed a summary judgment that a settlement agreement announced on the record was unenforceable. 270 S.W.3d at 774. Similar to the facts here,

> The agreement announced on the record to the court was presented as a complete agreement and final resolution of the litigation. There was no indication of any negotiation to occur in the future. There was no mention of any terms, material or otherwise, upon which agreement had yet to be reached. Although the parties contemplated a formal writing, this was not characterized as a condition requisite to the formation of the contract. The material terms of the agreement were carefully detailed

*Id.* at 776–77. Likewise here, we conclude that the particular terms of the additional documents were not essential and therefore did not destroy the Rule 11

agreement's effectiveness, and we hold that the Rule 11 agreement is not an

unenforceable "agreement to agree."[8] *See McCalla*, 416 S.W.3d at 418 (holding

that settlement agreement containing general release, description of real property to

---

[8] Like the *Montanero* and *Sadeghi* courts did and like we do here, other courts have enforced settlement agreements that contemplate additional documentation or leave open certain terms for future negotiation. *See, e.g.*, *Herring v. Heron Lakes Estates Owners Ass'n, Inc.*, No. 14–09–00772–CV, 2011 WL 2739517, at *4 (Tex. App.—Houston [14th Dist.] Jan. 4, 2011, no pet.) (mem. op.) (holding that settlement agreement dictated into record was enforceable despite statement that additional settlement documents would be prepared because transcript revealed "only one reasonable interpretation: the partie[s] intended to enter into a binding settlement agreement, and the numerous terms dictated into the record were not conditioned on any future negotiations or execution of formal settlement documents"); *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 123 (Tex. App.—El Paso 2007, no pet.) (holding that parties entered into binding settlement agreement even though agreement did not address disposition of tenant's security deposit or date to vacate premises—terms which "may have been significant to the parties' relationship"—because those terms were unessential "collateral matters"); *W. Beach Marina, Ltd. v. Erdeljac,* 94 S.W.3d 248, 259 (Tex. App.—Austin 2002, no pet.) (parties need not settle all disputed issues for mediated settlement agreement to be enforceable, but may agree on certain issues, leaving other issues open); *Cantu v. Moore*, 90 S.W.3d 821, 825 (Tex. App.—San Antonio 2002, pet. denied) (holding that settlement agreement was enforceable because source of funds from which settlement was to be paid and terms of indemnity were not essential terms); *Ronin*, 7 S.W.3d at 888 (holding that details of indemnity terms were not essential to settlement agreement); *Hardman v. Dault*, 2 S.W.3d 378, 380–81 (Tex. App.—San Antonio 1999, no pet.) (holding that settlement memorandum set out agreement's essential terms although it specified that "final documents" necessary to carry out agreement needed to be prepared); *CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App.—Fort Worth 1999, no pet.) (holding courtroom settlement agreement that included terms of payment and statement that parties would execute mutual releases contained all material terms); *see also McLendon v. McLendon,* 847 S.W.2d 601, 606−07 (Tex. App.—Dallas 1992, writ denied) ("[T]he attempts by the parties to reduce the rule 11 stipulations to writing do not affect the nature and effect of the stipulations dictated at the [hearing in open court].").

be sold, timeline for closing real property sale, identities of transferor and transferee, and price of real property was enforceable settlement).

## b. The execution of the additional documents is not a condition precedent to the formation of a binding settlement agreement

Stergiou further asserts that there is a fact issue as to whether the execution of the additional documents was a condition precedent to the formation of a binding Rule 11 agreement. As we have already noted, a binding settlement may be shown even if the parties contemplate that a more formal document memorializing their agreement will be executed at a later date. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846; *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 745–46 (Tex. 1988). The critical issue for determining enforceability when the parties agree that some terms will remain open is whether the parties intended for their agreement to be a present binding (enforceable) agreement in the absence of an agreement on the remaining terms or whether they intended their agreement to have no legal significance until agreement on the remaining terms is reached.[9]

---

[9] In this troublesome area, the Texas Supreme Court has quoted with approval from Corbin on Contracts—specifically, Section 29, Partial Agreements—"Contracts to Make a Contract." *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555−56 (Tex. 1972). We do the same:

> People do business in a very informal fashion . . . . A transaction is complete when the parties meant it to be complete. It is a mere matter of interpretation of their expressions to each other, a question of fact. * * *

*See Mabon*, 29 S.W.3d at 300 (observing that if parties do not intend to be bound until other terms are negotiated or until execution of formal document, then "there is no binding contract, but only an agreement to agree"); *Martin v. Black*, 909 S.W.2d 192, 196 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (whether settlement agreement that is subject to additional documentation is binding is determined by intent of parties); *Herring v. Heron Lakes Estates Owners Ass'n, Inc.*, No. 14–09–00772–CV, 2011 WL 2739517, at *2 (Tex. App.—Houston [14th Dist.] Jan. 4, 2011, no pet.) (mem. op.) (stating that, in determining enforceability of settlement agreement when future documents need to be prepared, "[t]he key question is whether the parties intended for a formal document to be executed as a condition precedent to being bound by contract"); *Border Gateway, L.L.C. v.*

---

> Even though certain matters are expressly left to be agreed upon in the future, they may not be regarded by the parties as essential to their present agreement. * * *
>
> Two persons may fully agree upon the terms of a contract, knowing that there are other matters on which they have not agreed and on which they expect further negotiation. Such an expectation does not prevent the agreement already made from being an enforceable contract. This may be true even though they expressly provide in their agreement that the new matters, when agreed upon, shall be incorporated into . . . [an]other formal document along with the contract already made.

*Id.* (quoting 1 Corbin on Contracts 87−91, 93−95 (1963)); *see also Frank B. Hall & Co., Inc. v. Buck*, 678 S.W.2d 612, 629 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (citing same).

*Gomez*, No. 14–10–01266–CV, 2011 WL 4361485, at \*3 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, no pet.) (stating that determination of whether mediation agreement is mere agreement to agree or binding obligation turns on "whether the parties intended for the contemplated formal writing to be a condition precedent to the formation of a contract, or merely a memorial of an already enforceable contract"); Williston on Contracts § 4:11 (4th ed. 2007) ("Ultimately, the question is one of fact as to the intention of the parties.").

Contrary to his statement to the trial court that the parties had reached an "agreement," Stergiou now contends that a fact issue exists on whether he intended to agree or merely agreed to agree. While intent is normally an issue of fact, "in some cases, a court may determine the intentions of the parties as a matter of law." *MCRB I, Ltd. v. Sw. Rail Indus., Inc.*, No. 14–10–00922–CV, 2011 WL 4031023, at \*3 (Tex. App.—Houston [14th Dist.] Sept. 13, 2011, no pet.) (mem. op.) (citing *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "[T]he actions of the parties may conclusively establish their intention to enter a binding agreement even if some terms are left for future agreement." *Tex. Oil Co. v. Tenneco, Inc.*, 917 S.W.2d 826, 830 (Tex. App.—Houston [14th Dist.] 1994), *rev'd on other grounds*, 958 S.W.2d 17 (Tex. 1997); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 33(1) cmt. a (1981) ("[T]he actions of the parties may show conclusively that they have

intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon."). As a matter of law, the record here does not support Stergiou's contention on appeal.

The parties did not indicate an intent not to be bound before the trial court or in the Rule 11 agreement itself. The transcript of the trial court proceedings clearly reflects that the parties were entering into a settlement agreement. At no time did either party state on the record that the Rule 11 agreement was merely a preliminary agreement. That is, neither party nor their counsel informed the trial court of any terms, material or otherwise, upon which agreement had yet to be reached. Although the Rule 11 agreement read into the record contemplated execution of additional documents, this was not characterized as a condition requisite to the formation of a binding settlement agreement; indeed, the Rule 11 agreement does not include any language indicating that the parties had engaged only in preliminary negotiations or that their agreement was contingent on agreement as to the terms of the additional documents. *Cf. Foreca*, 758 S.W.2d at 745 (formal documentation was condition precedent to formation of contract when provision in document containing material terms for sale and purchase of amusement park rides provided that document was "subject to legal documentation contract to be drafted by [the attorney for one of the parties]"); *Border Gateway*, 2011 WL 4361485, at *3 (stating that "a condition precedent to contract formation

is 'clearly' evidenced where an agreement unequivocally provides that a party does not intend to be bound until the execution of a final contract"); *Hardman v. Dault*, 2 S.W.3d 378, 381 (Tex. App.—San Antonio 1999, no pet.) (noting absence of any "subject to" language in settlement agreement); *CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App.—Fort Worth 1999, no pet.) (observing that parties' written settlement agreement did not state that additional term was condition precedent to binding agreement). The mere fact that additional documents were to be created does not, alone, create a fact issue as to the parties' intent to be bound. *See MCRB I, Ltd.*, 2011 WL 4031023, at *3−4 (holding that letter agreement's reference to future creation of formal rider and master lease did not create fact issue on whether parties intended to be bound by agreement).

Moreover, the summary judgment record is not limited to the absence of evidence of an intention not to be bound—the parties affirmatively represented to the trial court that they were bound by the Rule 11 agreement and requested that the trial court approve its terms. *Cf. Ronin*, 7 S.W.3d at 888 (observing that, in response to trial court's inquiry, party stated his agreement to terms of settlement dictated into record, and considering lack of statement on record that Rule 11 agreement was only preliminary factor in enforcing agreement). The parties behaved as though their settlement was binding after the hearing by working on the

22

settlement documents after the trial court approved the Rule 11 agreement. They exchanged drafts of the additional documents contemplated by the Rule 11 agreement, and they twice extended the agreed deadline for dismissing the lawsuit in order to continue negotiating the terms of the additional documents.

The timing and circumstances of this particular settlement agreement also evidence an intention to be bound immediately. The specific terms of the settlement were contingent on the jury's verdict. If the Rule 11 agreement was only preliminary and not intended to be final until the details of the additional documents were agreed upon, the party that prevailed before the jury might prefer the "win" over the compromised settlement, have little incentive to agree to the details of the additional documents, and choose to escape the settlement simply by refusing to execute the additional documents. Thus, in effect, Stergiou's interpretation reads a "get out of jail free" card into the Rule 11 agreement. If we were to hold as Stergiou suggests, trial courts would have difficulty approving settlements entered on the eve of trial or, as here, during the jury's deliberations because the parties generally will require additional time to prepare the formal documents memorializing their agreement. On the other hand, it is relatively easy to make it clear to the trial court that the agreement is contingent on further agreement on other documentation. Yet there is no evidence that Stergiou viewed the agreement as to the terms of the security agreement—other than the

identification of the collateral, which was set out in the agreement—as a condition precedent to the formation of a binding settlement.[10] If Stergiou in fact subjectively intended not to be bound if he prevailed at trial (but did intend for the GMF Companies to be bound if he lost), he deceived not only the GMF Companies but also the trial court.

We thus conclude that agreement upon the terms of the additional documents was not a condition precedent to the formation of a binding settlement between Stergiou and the GMF Companies,[11] and we overrule Stergiou's first sub-issue.

---

[10] Quite the opposite, the existence of the standard form security agreements referenced by Stergiou's expert supports a conclusion that the parties intended to be bound immediately. *See* RESTATEMENT (SECOND) OF CONTRACTS § 27 (1981).

[11] We note a distinction in Texas law between conditions precedent to the formation of a contract and conditions precedent to an obligation to perform an existing agreement. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 143 (Tex. App.—Dallas 2012, no pet.). If there is a condition precedent to the formation of a contract, then no binding contract will arise until the specified condition has occurred or been performed. *Hohenberg Bros.*, 537 S.W.2d at 3. On the other hand, if a term is a condition precedent to performance, the lack of performance does not preclude the formation of a binding contract. *See id.*; *see also 1993 GF P'ship v. Simmons & Co Int'l*, No. 14–09–00268–CV, 2010 WL 4514277, at *7 n.13 (Tex. App.—Houston [14th Dist.] Nov. 9, 2010, no pet.) (mem. op.). The issue of whether an agreement upon and execution of the additional documents is a condition precedent to Stergiou's performance under the Rule 11 agreement is not preserved in the summary judgment motions and responses and is outside the scope of this agreed interlocutory appeal. We decide only whether such agreement and execution is a condition precedent to the formation of a binding settlement agreement.

24

**2.    The Rule 11 agreement does not fail for indefiniteness**

Stergiou next argues that absent the parties' agreement on the terms of the additional documents, the Rule 11 agreement cannot be enforced as written because its terms are not sufficiently definite. He complains that it is impossible to enforce the Rule 11 agreement because the parties cannot agree on the additional documents' terms and a reviewing court cannot supply terms not agreed upon by forcing either Stergiou or the GMF Companies to accept the other's version of the additional documents. This challenge to the definiteness of the Rule 11 agreement is closely related to the issue just decided—namely, the issue of whether the terms of the additional documents are essential and whether the failure to execute those documents renders the Rule 11 agreement unenforceable.

"[A] contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846; *see also T.O. Stanley Boot Co.*, 847 S.W.2d at 221 (observing that contract must "be sufficiently definite in its terms so that a court can understand what the promisor undertook"); *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("If an alleged agreement is so indefinite that it is impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract."); *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 455 (Tex. App.—Fort Worth 2009, pet. denied)

25

(same). "The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain." *Tex. Oil Co.*, 917 S.W.2d at 830. The Restatement states that contract terms are reasonably certain "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." RESTATEMENT (SECOND) OF CONTRACTS § 33(2) (1981); *see Kelly*, 128 S.W.3d at 766; *Oakrock Exploration Co.*, 87 S.W.3d at 690; *Martin*, 326 S.W.3d at 749. "The degree of certainty required may be affected by the dispute which arises and by the remedy sought." RESTATEMENT (SECOND) OF CONTRACTS § 33 cmt. a (1981). For example, when a suit seeks money damages—rather than specific performance—less certainty is needed to render a contract enforceable. *Somers v. Aranda*, 322 S.W.3d 342, 345 (Tex. App.—El Paso 2010, no pet.); *Tex. Oil Co.*, 917 S.W.2d at 830.

Moreover, the fact that the parties have left certain terms open for negotiation in an agreement that they intend to be binding does not make the agreement indefinite; "courts endeavor, if possible, to attach a sufficiently definite meaning to" an agreement intended to be binding, "even though one or more terms are missing or are left to be agreed upon. . . . Where the parties have intended to conclude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract." RESTATEMENT (SECOND) OF CONTRACTS § 33

cmt. a; *see Kelly*, 128 S.W.3d at 766 (explaining that "Texas courts favor validating transactions rather than voiding them"); *E.P. Towne Ctr. Partners*, 242 S.W.3d at 122 ("Where the parties have intended to conclude a bargain, the agreement's silence as to non-essential, or collateral, matters is not fatal."); *see also Crest Ridge Constr. Grp., Inc. v. Newcourt Inc.*, 78 F.3d 146, 152 (5th Cir. 1996) (Benavides, J., concurring) ("Industry custom can fill in missing terms of a contract or determine the meaning of an agreement"); *Tex. Oil Co.*, 917 S.W.2d at 830 (observing that, in certain situations, court may uphold agreement by supplying missing terms but may not create contract where none exists or interject or eliminate essential terms). Whether an agreement fails for indefiniteness is a question of law. *Am.'s Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 622 (Tex. App.—San Antonio 1996, writ denied).

In support of his contention that the Rule 11 agreement fails for indefiniteness, Stergiou argues this case is analogous to *Nash v. Conatser*, 410 S.W.2d 512 (Tex. App.—Dallas 1966, no writ). There, the court observed that specific performance of a contract cannot be ordered when the contract is unenforceable for lack of material terms. *Id.* at 519–21. Because we have already disapproved of Stergiou's assertion that the Rule 11 agreement lacked material terms by overruling Stergiou's first issue, *Nash* is not controlling.

Here, the Rule 11 agreement set out the amounts to be paid for the return of the GMF Companies' stock and the dismissal of the lawsuit, how those amounts were to be paid and when, and the interest rate. These terms provide a basis for determining the existence of a breach and for giving an appropriate remedy, meaning they are sufficiently definite to enable a court to ascertain the parties' respective legal obligations. We therefore hold that the terms of the Rule 11 agreement are not so indefinite so as to preclude its enforcement, and we overrule Stergiou's second sub-issue.

**3.    The statute of frauds does not bar enforcement of the Rule 11 agreement**

Part of the dispute on appeal concerns the description of the security for Curry's promise to pay Stergiou $300,000 for the return of his stock. The Rule 11 agreement provides that the promissory note "will be secured by a first lien Deed of Trust and Security Agreement covering all furniture, fixtures, equipment, receivables (from the ordinary course of business), inventory, and real property owned by the GMF Companies known [as] (the White Buildings and the empty lot) (excluding the four lots the 'Blue Building' resides upon and the 'Blue Building') of General Metal Fabrication, Inc. and GMF Leasing, Inc."

Stergiou argues that we should reverse the trial court's summary judgment and render judgment that the Rule 11 agreement is not enforceable because it does not sufficiently describe the real property offered as security. This argument rests

28

on the premise that the Rule 11 agreement is a contract for the sale of real estate and thus subject to the statute of frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(4) (West 2009) (statute of frauds). Without deciding whether that premise is sound, we conclude that the Rule 11 agreement, together with the writings referenced by it, describes the property in a manner sufficient to satisfy the statute of frauds.

The statute of frauds does not require that a complete description of the land to be conveyed appear in a single document. *See Padilla*, 907 S.W.2d at 460 (holding that series of letters between parties satisfied statute of frauds). A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *See AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008). The description of the land may be obtained from documents that are prepared in the course of the transaction, even if those documents are prepared after the parties' contract for sale. *See Porter v. Reaves*, 728 S.W.2d 948, 949 & n.2 (Tex. App.—Fort Worth 1987, no writ) (description of land as "1/2 of a 20-acre tract" satisfied statute of frauds because location of tract was not disputed, parties referenced drawing of tract in their contract, and seller was required to furnish "current survey" of land after contract was executed); *see*

*also Adams v. Abbott*, 254 S.W.2d 78, 80 (Tex. 1952) (description furnished by exchange of correspondence between the parties).

The GMF Companies' summary judgment evidence included Curry's affidavit testimony that they owned three tracts of land, which were commonly referred to as the "Blue Building," the "White Buildings," and the "empty lot." Stergiou's attorney drafted the Rule 11 agreement using those same terms. Although the Rule 11 agreement describes the property to be secured by the deed of trust only as the "White Buildings" and "empty lot," but not "the four lots the 'Blue Building' resides upon and the 'Blue Building,'" the various deeds of trust and the security agreements circulated as drafts between the parties contain sufficient legal descriptions of those properties. The "White Buildings" are described as:

> Lots Five (5), Six (6), Fifteen (15) and Sixteen (16), in Block Fifty-Four (54), of KING'S COURT, an addition in Harris County, Texas, according to the map of the plat thereof recorded in Volume 7, Page 65 of the Map Records of Harris County, Texas.

The "empty lot" is described as:

> Lots 7, 8, 9 and 10, in Block 54 of KING'S COURT, an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 7, Page 65 of the Map of Records of Harris County, Texas.

These same legal descriptions appear in the drafts prepared by Stergiou and in the drafts prepared by the GMF Companies. Thus, there was no dispute between the parties regarding the identification of the real estate.

30

For this reason, we hold that the statute of frauds does not bar enforcement of the Rule 11 agreement, and we overrule Stergiou's third sub-issue.

**Interpretation of the Rule 11 Agreement**

Having determined that the Rule 11 agreement is enforceable, we now consider whether, as argued by the GMF Companies in their appeal, the agreement authorized Curry to pay the entire amount owed under the agreement at one time. In four issues, the GMF Companies contend (1) the Rule 11 agreement included a right of prepayment, (2) Curry's tender of the full $300,000 constituted substantial performance of the Rule 11 agreement, (3) by refusing that tender, Stergiou waived his right to interest under the Rule 11 agreement, and (4) Stergiou's failure to mitigate his damages by accepting the tender relieves Curry of any continuing burden to make interest payments. Only the GMF Companies' first issue is properly within the scope of this agreed interlocutory appeal.

1. **The Rule 11 agreement does not confer a right to prepay future monthly installments**

The Rule 11 agreement provided that the GMF Companies would pay Stergiou $300,000, in the form of a promissory note and on the following terms:

- Interest shall accrue on the Note commencing on the date thereof ~~at the Prime Rate charged by Bank of America. The interest rate of the Note shall change every time the Prime Rate changes.~~

  *6.5% per annum*
- $20,000 of principal will be paid on or before May 3, 2006;
- Commencing on June 1, 2006, and continuing monthly on the same day of each month thereafter and installment of $4,000.00 of principal and interest shall be due and payable until the Note has been paid in full. Each installment shall be applied first to the accrued interest and the balance, if any, shall be applied to the reduction of the principal balance.

There is no dispute that, pursuant to these provisions, the GMF Companies tendered the full $300,000 owed to Stergiou before the down-payment deadline.

In their first issue, the GMF Companies argue that the trial court erred in determining that they had no right to prepay the full $300,000 because the agreement included language requiring payment of $20,000 of principal "on or before" May 3, 2006. They assert that "when an instrument permits a payment 'on or before' a certain date, the maker—while required to make the minimum payment due by that date—also has the right to prepay any other amount, so long as he does so by the due date. And, the right to prepay is not simply a right to pay early, but a right to avoid paying unearned interest." Stergiou responds that the "on or before" language applied only to the $20,000 down payment and did not confer any general right to prepay the future payments owed. According to Stergiou, the interpretation urged by the GMF Companies would vitiate his right to receive interest and a long-term payout under the settlement.

32

When a contract is not ambiguous, we construe it according to the plain meaning of its express wording and enforce it as written. *Chapman v. Abbot*, 251 S.W.3d 612, 616−17 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "Extrinsic evidence may not be used to create an ambiguity." *See Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 745. "We may, however, examine the contract as a whole in light of the circumstances present when the contract was entered." *Transcontinental Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 665 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

"Our primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as it is expressed in the contract." *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *see also Padilla*, 907 S.W.2d at 460 (providing that contract law governs settlement agreements made pursuant to Rule 11). "To achieve this objective, we examine the entire writing in an effort to harmonize and give effect to all the contract's provisions so that none will be rendered meaningless." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

As is often true in cases involving contract disputes, neither side asserts that the Rule 11 agreement's payment provisions are ambiguous. But the existence of ambiguity is a legal question for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). If the contract can be given a certain or definite legal

meaning, it is not ambiguous, and a court should construe the contract as a matter of law. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). When a contract contains an ambiguity, however, the instrument's interpretation is a fact issue. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 224 S.W.3d 369, 379 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The words "on or before" have a particular meaning in Texas case law. More than one hundred years ago the Texas Supreme Court wrote: "The words 'on or before' are of such common use in promissory notes as to be well understood to mean, 'immediately at or at any time in advance of,' 'a period named.'" *Lovenberg v. Henry*, 140 S.W. 1079, 1080 (Tex. 1911). The GMF Companies rely on this well-established definition to support their assertion of a right to prepay the entire amount owing under the rule 11 agreement. But there is a critical distinction in the authorities cited by the GMF Companies: in each case the "on or before" language immediately preceded the payment at issue or the contract included an express right of prepayment. *See Cmty. Sav. & Loan Ass'n v. Fisher*, 409 S.W.2d 546, 548 (Tex. 1966) (note included express provision for prepayment of "entire balance before maturity"); *Novosad v. Svrcek*, 102 S.W.2d 393, 394 (Tex. 1937) (involving three payment obligations, each using "on or before" language); *Lovenberg*, 140 S.W. at 1080 (involving single payment obligation using "on or before" language);

34

*Karam v. Ballou*, 673 S.W.2d 643, 643 (Tex. App.—Texarkana 1984, writ ref'd n.r.e.) (involving two payment obligations, each using "on or before" language); *Fortson v Burns*, 479 S.W.2d 722, 723 (Tex. App.—Waco 1972, writ ref'd n.r.e.) (involving monthly installment obligations, each installment being due "on or before" certain date).

To apply these authorities here, we would have to presume that, by including the "on or before" language in the down payment provision, the parties intended it to apply to all of the payment provisions even though that language is not included in the provision for the future payments that are at issue. The structure of the rule 11 agreement counsels against making such a presumption. The down-payment provision and the future-payment provision are separately stated in separate bullet-pointed paragraphs using complete punctuation. The agreement uses different language to establish the time at which the down payment and monthly installments were due and payable. Moreover, under settled Texas law, "unless the loan agreement provides otherwise, a borrower does not have the right to prepay the loan." *Groseclose v. Rum*, 860 S.W.2d 554, 557 (Tex. App.—Dallas 1993, no writ); *Fisher*, 409 S.W.2d at 551 (contract did not permit prepayment of monthly payments where only express prepayment privilege was with respect to entire balance of the note); *Ware v. Traveler's Indem. Co.*, 604 S.W.2d 400, 401 (Tex. Civ. App.—San Antonio 1980, writ ref'd n.r.e.) (note allowing prepayment of

principal "on any interest due date" did not permit prepayment on any other dates); *Shipp v. Anderson*, 173 S.W. 598, 600 (Tex. Civ. App.—Galveston 1915, no writ) (absent contractual right, borrower may not compel lender to accept payments before they are due); *see also Parker Plaza W. Partners v. UNUM Pension and Ins. Co.*, 941 F.2d 349, 352 (5th Cir. 1991) ("Under Texas law, a borrower has no right to prepay a loan in the absence of the contract permitting it." (citing *Ware*, 604 S.W.2d at 401)). "Generally, it has been reasoned that in the absence of a prepayment option, a borrower who seeks and is allowed to repay a loan prior to its maturity, is seeking a privilege not otherwise his." *Ware*, 604 S.W.2d at 401. We cannot presume that a prepayment right exists outside the structure and plain language of the rule 11 agreement. *Id.*; *see Groseclose*, 860 S.W.2d at 557; *see also Fisher*, 409 S.W.2d at 551.

The language "on or before" in the Rule 11 agreement applies only to the down payment. The monthly payments, on the other hand, are governed by the language, "Commencing on June 1, 2006, and continuing monthly *on the same day of each month thereafter* an[] installment . . . shall be due *and payable*." (emphasis added). When the contract specifies that an amount is payable on a certain date, but not on or before that date, the amount is not payable at any other time. *Ware*, 604 S.W.2d at 401; *see also Burns v. True*, 24 S.W. 338, 340 (Tex. Civ. App. 1893) (notes maturing on fixed dates, not on or before such dates, not subject to

36

prepayment). Further, when the contractual language establishes a right to prepay a certain amount, that right does not extend to prepayment of other sums. *Fisher*, 409 S.W.2d at 551. We therefore reject the contention of the GMF Companies that the inclusion of "on or before" in the down-payment provision permits prepayment of any other amounts. *Id.*; *see also Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained.").

The GMF Companies argue that giving too much weight to the structure of the rule 11 agreement ignores their undisputed intent to provide a mechanism by which they could avoid paying Stergiou interest on the balance owed. Curry explained in his affidavit that "[he] did not believe [he] would have access to $300,000, which would be required in the event the jury's verdict went against GMF. [He] therefore sought to include a provision in the [rule 11 agreement] that would allow GMF to pay the $300,000 settlement amount if the jury's verdict required GMF to pay that amount." But this is evidence that Curry was concerned the GMF Companies could pay the $300,000 owed at all, not that his concern was for the avoidance of interest.

We also reject the GMF Companies' contention that the Rule 11 agreement required a down payment of "at least" $20,000. GMF Companies rely on Black's

Law Dictionary to support their contention that a "down-payment" usually refers to the minimum amount due. *See* BLACK'S LAW DICTIONARY 1244 (9th ed.) (2009). Such usage stems from the creditor's limitation on the amount of credit available to a borrower and does not affect our interpretation of the unambiguous requirement here for "$20,000 of principal." Nor do we find it persuasive that the agreement does not state the amount of principal due at the start of the monthly payment period or specify an amortization schedule or number of monthly payments. GMF Companies do not identify any authority for the principle that the absence of such elements indicates the existence of a prepayment right. To read the agreement as calling for an initial payment of "at least $20,000 of principal" would imply the words "at least" before each payment amount in any contract specifying amounts due, disturbing the settled rule that a borrower may not prepay principal, absent a contractual right to do so. *See*, *e.g.*, *Ware*, 604 S.W.2d at 401; *Burns*, 24 S.W. at 340.

Finally, we reject the contention that the term "until paid" implies that the parties contemplated prepayment of any amounts. As used in the Rule 11 agreement, the term "until paid" simply establishes that monthly payments would continue until the debt was satisfied, without a balloon payment or any breaks in the series of payments. The cases upon which GMF Companies rely are not controlling and are distinguishable. For example, in *Miller v. Potier*, 649 So.2d

1130 (La. Ct. App. 1995), a Louisiana intermediate court held that borrowers who made prepayments against a mortgage without paying its full balance were not relieved of the obligation to make future monthly payments. *Id.* at 1130–31. The lender accepted the payments, but applied them to principal, rather than as prepayments of monthly installments. *Id.* The issue was not whether the borrowers had a right of prepayment, but how prepayments voluntarily accepted by the lender were to be applied. *Id.* at 1131–32. The court therefore did not rely on the "until paid" language of the note in reaching its conclusion. *Id.* at 1132.

Likewise, in *In re Hunter*, 144 B.R. 871 (Bankr. D.S.D. 1992), the bankruptcy court considered a bankruptcy plan in which the parties had contemplated payment of a ten percent dividend, to be paid in ten annual installments without interest. 144 B.R. at 872, 874. The liens and encumbrances held by the creditors were to be held "until paid in accordance with this Plan." *Id.* at 872. The debtor, however, sought to pay less than the agreed amount by paying the "present value" of the obligations—that is, the agreed amount minus an offset for a hypothetical rate of return. *Id.* The court held that prepayment of the agreed-upon amounts would be consistent with the goals of the bankruptcy plan, because it would return the contemplated dividend, but payment of the "present value" of those payments was not permitted. *Id.* at 875. *Hunter* is thus comparable to a scenario in which the GMF Companies had tendered all of the contemplated

payments, not merely the original principal of the debt. That is not the scenario before us. On the contrary, when "the holder has bargained for the right to receive interest during the term of the instrument, the holder has the right to refuse an offer of payment before the instrument is due." *Fed. Fin. Co. v. Delgado*, 1 S.W.3d 181, 187 (Tex. App.—Corpus Christi 1999, no pet.).

GMF Companies also rely on *Coco v. Soniat*, 144 So.2d 432, 433 (La. Ct. App. 1962), where a Louisiana court construed an agreement requiring annual payments with "interest at six per cent per annum from date [u]ntil paid." That agreement, however, explicitly permitted prepayment of certain amounts. *Id.* The court decided not whether such a right existed, but whether the prepayment constituted an advance of the next annual installment or a prepayment of principal. *Id.* GMF Companies' other cases are similarly distinguishable. *E.g.*, *Engler v. Senter*, No. 04–04164–CV–C–NKL, 2006 WL 1476945, at *4 (W.D. Mo. 2006) (prepayment right based on express provision that "Buyer shall have the right of prepayment . . . at any time" and not on language "until balloon is paid on or before 1 year"); *see also Stauth v. Brown*, 734 P.2d 1063, 1067 (Kan. 1987) (prepayment right did not derive from "until the total price is paid" language where contract explicitly gave borrowers right to prepay "all or any part of the unpaid balance without penalty"). These cases are irrelevant to the facts before us.

GMF Companies also rely on a line of cases from other states construing the language "if not sooner paid" as conferring a right of prepayment. *See Latimer v. Grundy Cnty. Nat'l Bank*, 607 N.E.2d 294, 296 (Ill. App. Ct. 1993) (language "shall be due and payable on June 1, 2003, if not sooner paid" contemplated prepayment right); *Beth-June, Inc. v. Wil-Avon Merch. Mart, Inc.*, 233 A.2d 620, 622 (Pa. Super. Ct. 1967) (holding that prepayment right existed where contract called for payment of "balance of principal remaining unpaid together with accrued interest thereon, if not sooner paid"). The Rule 11 agreement does not contain such language or its equivalent. These cases therefore have no relevance to this dispute.

A plain, literal reading of the words used in the rule 11 agreement compels a conclusion that the agreement did not confer any right of prepayment with respect to the GMF Companies' future payment obligations. Consequently, the trial court did not err in granting summary judgment against the GMF Companies on this issue, and we overrule their first issue.

**2.    The GMF Companies' arguments regarding substantial performance, waiver, and mitigation are outside the scope of this interlocutory appeal**

In their remaining issues, the GMF Companies argue that they substantially performed under the Rule 11 agreement, that Stergiou waived his right to collect interest on the settlement amount by refusing the GMF Companies' tender of full payment under the Rule 11 agreement, and that Stergiou failed to mitigate his damages. The trial court, however, authorized this interlocutory appeal only from

the "two orders . . . on the parties' cross motions for summary judgment on the issues of whether (1) their Rule 11 settlement agreement is enforceable, granted in favor of [the GMF Companies], and (2) [the GMF Companies] had the right to prepay the amount due under the Rule 11 settlement agreement, granted in favor of [Stergiou]." *See* Act of May 27, 2005, 79th Leg., R.S., ch. 1051, § 1, 2005 TEX. GEN. LAWS 3512, 3513, amended by Act of May 25, 2011, 82nd Leg., R.S., ch. 203, § 3.01, 2011 TEX. GEN. LAWS 759, 761 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West Supp. 2013).[12] The two orders referenced were attached to the joint notice of appeal signed by counsel for the GMF Companies and Stergiou. Consistent with the trial court's order permitting the appeal, the summary judgment orders make clear that they are decisions on the issues of enforceability and prepayment. The joint notice of appeal raises these same two issues, and only these two issues.

Given that the trial court's orders and the parties' joint notice of appeal frame the issues to be decided in the same narrow manner, we conclude that the GMF Companies' arguments regarding their substantial performance of the Rule 11 agreement, Stergiou's waiver of the right to receive interest, and Stergiou's

---

[12]    The former version of section 51.014(d) applies to cases filed in the trial court before September 1, 2011. Act of May 25, 2011, 82nd Leg., R.S., ch. 203, § 6.01, 2011 TEX. GEN. LAWS 759, 761.

alleged failure to mitigate damages are outside the scope of this appeal. We therefore overrule the GMF Companies' second, third, and fourth issues.

## Conclusion

Having concluded that the trial court did not err in determining that the Rule 11 agreement was enforceable and did not provide for prepayment of the obligations thereunder, we affirm the trial court's summary judgments.


Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Justice Sharp, dissenting with opinion to follow.