**Opinion issued August 7, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00340-CV

————————————

**AMERICAN FISHERIES, INC., Appellant/Cross-Appellee**

**V.**

**NATIONAL HONEY, INC., D/B/A NATIONAL COMMODITIES CO. OR D/B/A NCC GROUP, LTD., JUN YANG, INDIVIDUALLY, AND LIN HUANG, INDIVIDUALLLY, Appellees/Cross-Appellants**

---

On Appeal from the 157th District Court
Harris County, Texas
Trial Court Case No. 2013-29749

---

# O P I N I O N

Appellant/cross-appellee, American Fisheries, Inc., challenges the trial court's award of attorney's fees granted to appellees/cross-appellants, National Honey, Inc., *d/b/a* National Commodities Co. or *d/b/a* NCC Group, LTD., Jun

Yang, individually, and Lin Huang, individually (collectively, National Honey), in connection with the enforcement of a settlement agreement and a motion for sanctions. In its sole issue on appeal, American Fisheries argues that the trial court abused its discretion in awarding attorney's fees for enforcing a materially disputed settlement agreement. In its cross-appeal, National Honey complains in six issues that the trial court erred in denying sanctions against American Fisheries' attorney.

We affirm.

## Background

American Fisheries sued National Honey, asserting breach of contract, fraud, and other claims in connection with a contract for the sale of frozen shrimp. National Honey counter-claimed, asserting causes of action for violation of the Texas Deceptive Trade Practices Act, breach of express and implied warranties, fraud, and breach of contract.

After nearly four years of litigation, the parties eventually reached a settlement. They appeared before a Special Master on January 17 and 18, 2017, to pre-admit exhibits according to the schedule set by the trial court; but, instead, the parties reached a settlement and read their Rule 11 agreement (the Rule 11 Agreement) into the record on January 18, 2017. According to the report filed by the Special Master, the Master met with the parties on January 17, 2017, and, "[a]fter a conference between counsels, a settlement was announced." The Master

further reported that counsel for American Fisheries had "requested an adjournment until the next day to obtain approval from his client in China."

The Special Master reported that the parties appeared before her again on January 18, 2017, and that American Fisheries' counsel, Andrew Gass, "announced the settlement offered by [National Honey] was accepted." She further reported that counsel for National Honey was charged with drafting the agreement and that both the Special Master and counsel for American Fisheries waited while the agreement was drafted. She stated, "At mid-day on January 18, the parties announced the settlement document was complete. The agreement was read into the record" with counsel for both parties present, and a transcript of the proceeding was filed in the trial court.

The Rule 11 Agreement read into the record contained ten paragraphs. It provided that National Honey would pay a lump sum settlement via wire transfer to American Fisheries, and, in exchange, American Fisheries would "dismiss with prejudice all claims asserted or which could have been asserted in this cause of action against" National Honey and its agents. The Rule 11 Agreement addressed American Fisheries' further obligations to release claims to funds held in connection with litigation in federal court in Illinois and in the Southern District of Texas. The terms of the Rule 11 Agreement further required that National Honey release all of its claims against American Fisheries. The Agreement also addressed

certain third-party defendants, stating that National Honey and the individual representatives "will dismiss, as they deem fit, their claims asserted or which could have been asserted" against those third parties. Finally, the Rule 11 Agreement provided, "No other sums of money shall be paid by American Fisheries, National Honey, Inc., Jun Yang or Lin [Huang] pursuant to the settlement agreement, other than the [confidential settlement amount] referred to in" the Agreement.

At the time the parties entered into this Rule 11 Agreement on the record before the Special Master, American Fisheries also had a petition for writ of mandamus pending in this Court, in which it challenged the trial court's ruling quashing a deposition. *See In re American Fisheries*, No. 01-17-00026-CV, 2017 WL 2255772, at *1–2 (Tex. App.—Houston [1st Dist.] May 23, 2017, orig. proceeding) (per curiam). The Rule 11 Agreement required American Fisheries to inform this Court that the petition for writ of mandamus was moot in light of the settlement.

On February 20, 2017, National Honey sent a written settlement agreement (the Settlement Agreement) reflecting the terms of the Rule 11 Agreement to American Fisheries through its lead attorney, Xenos Yuen, who had not been present at the hearing on January 18, 2017. American Fisheries responded with a proposed agreement of its own, seeking additional fees that it owed to a financial manager appointed by the trial court pursuant to a 2013 agreed temporary

4

injunction[1] and seeking to address the dismissal of certain third parties, many of whom had not yet appeared before the trial court.

On February 24, 2017, counsel for National Honey sent Yuen an email demanding that American Fisheries comply with the Rule 11 Agreement entered into on January 18, 2017, as embodied in the written Settlement Agreement that National Honey had sent to Yuen on February 26. National Honey informed American Fisheries that its "proposal is not consistent with the Rule 11 Agreement made on January 18, 2017," pointing out that the Agreement stated the amount of total compensation to be paid to American Fisheries and that it would not now agree to pay any additional funds. National Honey stated that it had deposited the settlement funds into its attorney's trust account in order "to complete the settlement," and if American Fisheries would not agree to proceed based on the Rule 11 Agreement, it would "ask the Appellate Court to lift the stay [imposed in the mandamus proceeding] so that we may proceed to enforce the Rule 11 Agreement." National Honey subsequently sought, and obtained, a stay of the mandamus proceedings so that it could enforce the Rule 11 Agreement in the trial court.

---

[1] These fees were apparently incurred by American Fisheries as the result of the trial court's order requiring it to pay half of the fees owed to the financial manager appointed to address another aspect of the parties' dispute.

5

On March 23, 2017, corporate representatives of American Fisheries executed the February 20, 2017 draft of the Settlement Agreement created by National Honey to memorialize the terms of the Rule 11 Agreement before a notary at the consulate in Shanghai. However, Yuen, American Fisheries' counsel, did not convey the signed Settlement Agreement to the trial court or to National Honey. Instead, Yuen made multiple inconsistent representations to National Honey, on one occasion stating that American Fisheries was prepared to execute the Settlement Agreement, but on other occasions arguing that the scope of the Rule 11 Agreement was still disputed and engaging in further negotiations.

On March 30, 2017, National Honey—which at that time was unaware that corporate representatives of American Fisheries had executed the Settlement Agreement seven days earlier—moved to enforce the Rule 11 Agreement entered into on January 18, 2017. National Honey related the details of the Rule 11 Agreement reached on the record before the Special Master on January 18, 2017, and it asserted that it had prepared the settlement documents as contemplated at the January 18 hearing. National Honey asserted that, on February 12, 2017, American Fisheries "sent its revisions to the settlement agreement, substantively altering many items that were previously agreed to before [the] Special Master[.]" According to the motion to enforce, the parties exchanged numerous drafts of the Settlement Agreement through the end of February 2017. The motion asserted,

6

"[American Fisheries] has attempted to modify the terms of the Rule 11 Agreement. The parties cannot agree on a formal document for the Settlement Agreement made on the record on January 18, 2017. Consequently, [National Honey] request[s] that this Court enforce the Settlement Agreement, as read into the record."

In its motion to enforce the Settlement Agreement, National Honey cited authority indicating that a motion to enforce a settlement agreement may be treated as a motion for summary judgment if it gives the nonmovant notice of the claim and an opportunity to defend itself. It provided notice of an oral hearing more than twenty-one days from the date of filing the motion to enforce. National Honey further argued that it had established its right to enforcement of the Rule 11 Agreement as a matter of law—i.e., that the parties had a valid and enforceable agreement, that it had tendered performance, that American Fisheries had breached the terms of the Agreement, and that National Honey was harmed as a result of the breach. National Honey also presented evidence, including transcripts of the hearing in which the parties entered into the Rule 11 Agreement, the written Settlement Agreement memorializing the Rule 11 Agreement it had provided to American Fisheries, the declaration of National Honey indicating that it had deposited the settlement funds into its counsel's IOLTA account, and various communications between counsel for American Fisheries and National Honey.

National Honey further asserted in its motion to enforce the Rule 11 Agreement that Andrew Gass and Diane Guillerman, the attorneys who represented American Fisheries at the January 18, 2017 hearing, "clearly accepted the agreement on the record on January 18, 2017," after having informed the Special Master that their client wanted to accept National Honey's settlement offer and having been granted a continuance to consult with their client before entering the Rule 11 Agreement into the record. National Honey asserted that Yuen, American Fisheries' counsel, was attempting to change the settlement terms and was arguing that he had not been present during the January 18 hearing and that he had been unaware of the terms of the settlement.

National Honey included with its motion to enforce the Rule 11 Agreement a copy of a motion to withdraw that had been filed by Guillerman in this Court in conjunction with the related mandamus proceeding. In her motion to withdraw, Guillerman asserted, among other grounds, that while the mandamus was pending, "the parties in the underlying suit began settlement negotiations and entered into a Rule 11 agreement, embodying the terms of the agreed upon settlement negotiations, on January 18, 2017." She stated that "Xenos Yuen gave [Gass, the attorney who was present on behalf of American Fisheries at the January 18, 2017 hearing,] authority to enter into the settlement agreement." She further stated that

8

"Gass and the other attorneys working on behalf of [American Fisheries] requested Xenos Yuen attend the hearing before [the Special Master], but Yuen refused."

Finally, National Honey sought approximately $31,000 in attorney's fees incurred in connection with its motion to enforce the settlement agreement. It included affidavits establishing the amount of attorney's fees.

On April 20, 2017, Gass and Guillerman intervened in the underlying lawsuit and moved for attorney's fees. According to their pleadings and other arguments presented during hearings before the trial court, both Gass and Guillerman worked with Yuen on the underlying case and he promised to pay them a portion of the verdict or settlement in exchange for their services. However, problems developed following the hearing on January 18, 2017, and Yuen removed Gass and Guillerman from the case. They moved for the trial court to determine the attorney's fees owed to them pursuant to their agreement with Yuen and to order payment accordingly.[2]

The trial court held a hearing on April 21, 2017. Yuen appeared on behalf of American Fisheries. Gass and Guillerman appeared as intervenors seeking attorney's fees for their prior work on behalf of American Fisheries, and

---

[2] The record on appeal contains only an unofficial copy of this pleading. However, Yuen subsequently agreed on the record to pay the agreed-upon attorney's fees to Gass and Guillerman, and the trial court included the award of attorney's fees to both of them in the final judgment. American Fisheries does not challenge the trial court's ruling on this claim.

Guillerman stated that "all of [Gass's and her] issues in this matter relate to the settlement agreement, which is why the [parties] are here today." Yuen asked the trial court to exclude them from the hearing, but the trial court refused. Attorneys for National Honey also appeared and argued that the trial court should grant the motion to enforce the Rule 11 Agreement as asserted in its motion, and National Honey supplemented its attorney's fees affidavit with time records and moved "to have that summary judgment evidence admitted."

At the hearing, Yuen argued, among other grounds, that the Rule 11 Agreement was not enforceable because he was not present during the January 18, 2017 hearing before the Special Master and because the Rule 11 Agreement was not entered into "in open court," but was done "in front of a court reporter." When the trial court pointed out the agreement was reached before the Special Master, "who is an officer of this Court," Yuen argued that the Special Master "was there only for a specific purpose, [to] admit evidence or exhibits" and thus the Master was not "actually representing the Court for anything other than doing the exhibits." Yuen also argued that, "if any agreement between the [parties] can be withdrawn . . . , then you should go for a new pleading or a summary judgment or trial in order to determine [the enforceability of the agreement]" and that National Honey ought to be required to replead its case. He also argued that National Honey did not properly make a demand and presentment as required under Civil Practice

10

and Remedies Code Chapter 38 and thus was not entitled to attorney's fees. He also stated, "It is true that [American Fisheries] wanted to settle these matters. However, during the finalization of the terms, all we can say is that on the Rule 11 agreement, there is an agreement to agree. And there are some terms, but [the] terms are [being] disputed at this point."

At the conclusion of this hearing, the trial court announced on the record its intention to grant the motion to enforce the Rule 11 Agreement. It further awarded National Honey the entirety of the attorney's fees it sought in connection with the motion to enforce. It then continued the hearing, stating that it would consider Gass and Guillerman's intervention at a subsequent hearing.

The trial court held another hearing on April 24, 2017, noting at the beginning of the hearing that American Fisheries' counsel, Yuen, was not present despite having "acknowledged the rescheduling of the hearing to this morning." It stated that it had waited for a period of time for Yuen to arrive but it was going to proceed in his absence. The trial court reiterated that it was "inclined to grant" the motion to enforce the Rule 11 Agreement, and it discussed with the attorneys present the issue of taxable costs. The trial court ultimately continued the remainder of the hearing due to Yuen's absence and the fact that the intervening parties, Gass and Guillerman, had a hearing on their motion for attorney's fees scheduled for April 28, 2017.

According to the parties, the trial court signed an order granting National Honey's motion to enforce the Rule 11 Agreement on April 25, 2017, ordering American Fisheries to "comply with the Rule 11 Agreement announced and agreed to on January 18, 2017."[3] The trial court further granted National Honey attorney's fees in the amount of $31,860.50 plus conditional appellate attorney's fees.

The trial court held another hearing on April 28, 2017, with the intention of resolving the intervenors' motion for attorney's fees. In this hearing, Yuen announced,

> I believe that I need to announce to the Court that we have a final resolution which may have changed the whole—put this whole thing as a moot issue. This is the final settlement offer by [National Honey] and it was executed. It demanded about the settlement and it was the first time [sic], [and it has] all the signature[s] of the parties.
>
> And after I consult[ed] with my client, they agree[d] with that. And this is the actual settlement agreement that they sent with that letter so that that basically would be the final settlement being signed and accepted—offered and accepted on April the 27th and it was signed; and therefore, we would have to go back to this final settlement agreement.

Yuen stated that the "signature of his client was notarized," and, without pointing out the date that the agreement was executed and notarized, he provided to the court the Settlement Agreement that was executed by American Fisheries on March 23, 2017, prior to National Honey's filing of its motion to enforce and prior

---

[3] The record in this case contains only an unofficial copy of this order. However, the final judgment recited substantially similar rulings regarding the settlement agreement and attorney's fees.

to the trial court's April 25 order. Counsel for National Honey, apparently not realizing that the date of the execution of the Settlement Agreement predated the trial court's order, stated that "we had not seen that document," and he argued, "It appears that what they have done now is try to change the facts that occurred. They have now signed the agreement that they were not willing to sign before your order." Finally, Yuen agreed on the record to pay the attorney's fees requested by Gass and Guillerman.

At the conclusion of the April 28, 2017 hearing, as the trial court was discussing the rulings that needed to be included in the final judgment, counsel for National Honey pointed out that the trial court had previously granted more than $31,000 in attorney's fees incurred in connection with National Honey's attempts to enforce the Rule 11 Agreement. Yuen objected to the trial court's including this award in the final judgment, stating,

> [T]he offer which I just showed you, the original, that was sent on the 26th—on the 27th with the signature of the part[ies] . . . basically preempt[s] everything else. It was a new offer. It was accepted and it is now [before the court]. Therefore, the attorney fees to enforce [are] no longer necessary. And therefore, we ask the Court to actually rescind that order. It is no longer necessary, because there is a new offer.

In response, National Honey argued that its lawyers sent the signed Settlement Agreement to American Fisheries, through Yuen, "because of your order of April 25th," stating:

The parties were to sign the agreement. That is the settlement agreement that was attached to your order. It was also the settlement agreement that was sent to Mr. Yuen on February 20th that he did not sign, which instigated us even having to move to enforce[.] It's not a new settlement agreement and it's not a new offer.

The trial court determined that the attorney's fees requested by National Honey were "necessitated by the reluctance of the plaintiffs [American Fisheries] to consent to the settlement that had been read into the record and the Rule 11 agreement." It further determined that the fees requested were reasonable and necessary and ordered that the requested fees be deducted from the settlement.

The trial court signed its final judgment on April 28, 2017, entering judgment based on the parties' terms of the Rule 11 Agreement as embodied in the Settlement Agreement. It also included an award to National Honey of $31,860.50 in attorney's fees and an award of a portion of the attorney's fees to Gass and Guillerman.

On May 27, 2017, National Honey moved to modify the final judgment and sought sanctions to address Yuen's conduct prior to and following the entry of the final judgment. It argued that Yuen represented to both the trial court and to National Honey that American Fisheries had signed the Settlement Agreement sent pursuant to the trial court's April 25 order, when, in reality, American Fisheries had, on March 23, 2017, signed the Settlement Agreement sent to it by National

14

Honey the previous month. Thus, it asked the trial court to modify the judgment to reflect the correct nature of the agreement between the parties.

National Honey also sought sanctions pursuant to Civil Practice and Remedies Code Chapter 10, Rule of Civil Procedure 13, and Rule of Civil Procedure 191.3 to address Yuen's conduct. It cited, among other alleged violations of the Texas Disciplinary Rules of Professional Conduct, the facts that Yuen (1) failed to notify the trial court or National Honey that American Fisheries "had actually signed the settlement agreement prepared by [National Honey's] counsel on March 23, 2017, seven days before [National Honey's] counsel filed the Motion to Enforce Rule 11 Settlement Agreement"; (2) argued that there was no Rule 11 Agreement after his client had signed the Settlement Agreement; and (3) "told the [trial court] and [National Honey] that [American Fisheries] 'accepted' the settlement on April 27, 2017, when clearly [American Fisheries] accepted the settlement on March 23, 2017." National Honey asserted that Yuen made these misrepresentations before the trial court in this case and that he made these or substantially similar misrepresentations in related litigation that was pending in federal court in Illinois and the Southern District of Texas.

In support of its motion, National Honey attached numerous documents, including the copy of the Settlement Agreement signed by American Fisheries' corporate representatives on March 23, 2017, and the copy of the Settlement

Agreement executed by National Honey's representatives and sent to American Fisheries pursuant to the trial court's April 25, 2017 order. National Honey also included copies of numerous communications between Yuen, on behalf of American Fisheries, and counsel for National Honey.

American Fisheries responded, arguing that an award of sanctions would be improper. In the response, it argued, "On April 27, 2017, the Plaintiff [American Fisheries] felt forced to accept and did accept[] the presentment of [the] Settlement Agreement to dispose of the claims and causes of action by and between [the parties], by signing, the presented Settlement Agreement, in counterpart." American Fisheries argued that the motion for sanctions had no basis in law or in fact, that it "contradicts" the trial court's final judgment dismissing all of the parties' claims, and that it "contradicts the alleged Rule 11 agreement." American Fisheries specifically argued that the motion for sanctions was improper because "[t]he Settlement Agreement executed by the parties and . . . which is binding provides" for a release by National Honey of any future claims, rights, demands, or causes of action.

The trial court held an evidentiary hearing on the motion to modify and to award sanctions on July 21, 2017, and the hearing was later continued until August 3, 2017. National Honey presented evidence of the foregoing events, including the nature of the settlement negotiations; the parties' Rule 11 Agreement; the

subsequent communications between Yuen and counsel for National Honey; the fact that representatives of American Fisheries executed the Settlement Agreement on March 23, 2017; Yuen's failure to inform National Honey that his clients had executed the Settlement Agreement, necessitating National Honey's motion to enforce; the purported misrepresentations made by Yuen throughout the litigation up until the April 28, 2017 hearing and beyond; and the additional attorney's fees incurred by National Honey following the April 28, 2017 hearing and final judgment. National Honey sought sanctions for, among other things, Yuen's attempt to renegotiate the parties' settlement even after his client had executed the Settlement Agreement; Yuen's misrepresentations about the date on which his client had executed the Settlement Agreement, both in the trial court and in other courts in which proceedings were pending; and several other improper actions.

At the sanctions hearing, Yuen testified that although his clients had executed the Settlement Agreement on March 23, 2017, he was not authorized to release that document to National Honey or to the trial court at that time. He stated that his clients desired that he attempt to renegotiate some of the items discussed amongst the parties, such as the fees for the financial manager and the terms for dismissal of certain third-party claims.

At the conclusion of the sanctions hearing, the trial court noted that it had "previously ruled that Mr. Yuen attempted to retrade the deal subsequent to the

17

Rule 11 [A]greement" and that this was the justification for its award of attorney's fees to National Honey in the April 28, 2017 final judgment. The trial court further stated,

> One of [National Honey's] principal arguments in this motion is that Mr. Yuen failed to disclose that his client had previously signed the [S]ettlement [A]greement on March 23rd. This Court accepts Mr. Yuen's testimony that he was not authorized to release that document unless there were other items that were renegotiated. While that attempted renegotiation may have been improper, this Court has already issued attorney's fees for that and no additional sanctions will be issued on that.

Regarding the other conduct for which National Honey sought sanctions, the trial court denied sanctions "for at least two reasons," including that National Honey had released its claims against Yuen for all matters prior to the Settlement Agreement and that National Honey lacked standing to seek attorney's fees for some of the conduct. The trial court further stated on the record that any complaints regarding improper conduct or false statements that were made in federal courts "should be addressed to those courts."

On August 10, 2017, the trial court signed its order denying National Honey's motion to modify and motion for sanctions. This appeal followed.

**Attorney's Fees**

In its sole issue on appeal, American Fisheries argues that the trial court erred in granting attorney's fees to National Honey in connection with its motion to enforce the Rule 11 Agreement.

18

## A.  Form and Procedural Posture of Motion to Enforce

American Fisheries asserts various complaints about the form of National Honey's motion to enforce and the procedural posture of the proceedings before the trial court at the time it ruled on the motion to enforce. Among other arguments, American Fisheries argues that National Honey failed to comply with "the normal rules of pleading and proof" for enforcing a contested Rule 11 agreement and that it did not afford American Fisheries an opportunity to conduct discovery or allow it a full hearing. We conclude that the motion to enforce properly placed the issue of enforceability of the parties' agreement before the trial court.

An agreement to settle a case is enforceable by the trial court if it complies with Texas Rule of Civil Procedure 11. *See, e.g.*, *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Rule 11 requires that the agreement must be either (1) in writing, signed, and filed with the papers as part of the record or (2) made in open court and entered of record. TEX. R. CIV. P. 11.  Here, the parties, through their counsel, announced before the Special Master that they had reached a settlement. Counsel for National Honey drafted the settlement document while the Special Master and counsel for American Fisheries waited. The settlement document was then read into the record before the Special Master, and both parties' attorneys affirmatively represented that those terms constituted the agreement between the

19

parties. Thus, the record reflects that the parties' agreement was made in open court and entered of record on January 18, 2017. *See id.*; *Padilla*, 907 S.W.2d at 460.

American Fisheries contends that the agreement was not made in open court because it was made before the Special Master, and not the trial court. However, it points to no authority, nor could we find any, to support its contention that an agreement announced on the record before a Special Master was not made "in open court." On the contrary, special masters appointed pursuant to Rule of Civil Procedure 171, as here, are officers of the court under the direction of the trial court and "have such powers as the master of chancery has in a court of equity." *See* Tex. R. Civ. P. 171; *In re Harris*, 315 S.W.3d 685, 704–05 (Tex. App.— Houston [1st Dist.] 2010, orig. proceeding) (discussing powers typically extended to special master as including authority to contact parties, conduct hearings, require production of evidence, and make recommendations to trial court). Furthermore, the agreement here was reduced to writing and read into the record and approved by both parties. National Honey further memorialized the parties' Rule 11 Agreement in the written Settlement Agreement that was executed by representatives for American Fisheries on March 23, 2017, and formally accepted and agreed to on the record before the trial court on April 28, 2017.

American Fisheries also argues that, because it rescinded the Agreement prior to judgment or effectively revoked its consent to the terms of the settlement between January 18, 2017, and April 27, 2017, the trial court erred in not requiring additional proceedings before enforcing the Agreement in its April 25, 2017 order. This argument misconstrues the procedural posture of the motion to enforce. "Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement." *Padilla*, 907 S.W.2d at 461.

American Fisheries asserts that National Honey failed to seek enforcement of the Agreement "in a separate action, subject to the normal rules of pleading and proof," but this Court "repeatedly has held that a motion to enforce an agreement may be treated as a motion for summary judgment so long as the motion 'gives the nonmovant notice of the claim asserted and an opportunity to defend itself.'" *Bruess v. Residential Credit Sols., Inc.*, No. 01-13-00321-CV, 2014 WL 3843517, *3 (Tex. App.—Houston [1st Dist.] Aug. 5, 2014, no pet.) (quoting *Robinson v. Cason*, No. 01-11-00916-CV, 2013 WL 3354651, at *4 (Tex. App.—Houston [1st Dist.] July 2, 2013, no pet.) (mem. op.), and citing *Bayway Servs., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003,

21

no pet.), and *Neasbitt v. Warren*, 105 S.W.3d 113, 117 (Tex. App.—Fort Worth 2003, no pet.)).

The record demonstrates that National Honey presented its claim that American Fisheries was in breach of the parties' Rule 11 Agreement in advance of seeking enforcement in the trial court when it emailed Yuen on February 24, 2017, informing him that National Honey believed the parties had a valid agreement and that it would seek enforcement in the trial court if American Fisheries did not honor the Agreement. National Honey subsequently moved to enforce the parties' Rule 11 Agreement on March 30, 2017, and provided notice of a hearing at least twenty-one days in advance. *See* TEX. R. CIV. P. 166a(c) (requiring twenty-one days' notice of summary judgment motion). Furthermore, National Honey argued that it had established its right to relief as a matter of law, citing authority that such a motion can be considered a motion for summary judgment. National Honey presented evidence that the parties had a valid Rule 11 Agreement to settle, and American Fisheries eventually effectively conceded as much by releasing the executed Settlement Agreement that embodied the terms of the Rule 11 agreement, albeit after National Honey was forced to file its motion to enforce.

Based on the record here, we conclude that the trial court could properly treat the motion to enforce as a summary judgment motion. *See Bruess*, 2014 WL 3843517, *3; *Bayway Servs., Inc.*, 106 S.W.3d at 160.

22

## B.     Merits of the Motion to Enforce

American Fisheries argues on appeal that there was no valid Rule 11 agreement or other enforceable settlement agreement between the parties until April 27, 2017, when it finally agreed to the Settlement Agreement. It argues that, prior to that time, no enforceable agreement existed and the trial court erred in awarding National Honey attorney's fees in connection with enforcing such an agreement, as it did in its April 25, 2017 order granting National Honey's motion to enforce.

As we held above, the motion to enforce was effectively a motion for summary judgment on National Honey's claim that American Fisheries had breached the parties' Rule 11 Agreement. We review summary judgments de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). The movant bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215–16.

"Contract law governs settlement agreements made in open court pursuant to Rule 11." *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Padilla*, 907 S.W.2d at 460); *see also Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Heath & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) ("Litigants' Rule 11 agreements are contracts relating to litigation, and thus we construe them under the same rules as a contract."). The enforceability of a settlement agreement is a question of law. *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013); *see also Stergiou*, 438 S.W.3d at 744 (issue of whether Rule 11 settlement agreement fails for lack of essential terms is generally question of law to be determined by court); *Martin v. Martin*, 326 S.W.3d 741, 746 (Tex. App.—Texarkana 2010, pet. denied) ("The question of whether an agreement is an unenforceable agreement to agree is a question of law, not a question for the jury."). A Rule 11 agreement will be enforced when it is "made in open court and entered of record." TEX. R. CIV. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."); *Shamrock Psychiatric Clinic, P.A.*, 540 S.W.3d at 561 ("To be effective, a Rule 11 agreement must consist of a 'written memorandum

24

which is complete within itself in every material detail, and which contains all of the essential elements of the agreement.'").

National Honey presented the trial court with evidence establishing the existence of a valid Rule 11 agreement as a matter of law. The agreement was made on the record before the Special Master. The transcript of that hearing and the report of the Special Master both reflect that the parties expressly agreed to the terms set out in the transcript on the record and subsequently filed with the trial court. The Rule 11 Agreement here included all of the essential terms for the payment of money in exchange for the performance of some act—i.e., National Honey agreed to pay one lump sum settlement amount in exchange for the parties' release or nonsuit of any claims. *See Stergiou*, 438 S.W.3d at 745 ("Like most settlement agreements, the Rule 11 agreement here included essential terms for the payment of money in exchange for the performance of some act[.]"); *see also Padilla*, 907 S.W.2d at 460–61 (noting that material terms of Rule 11 settlement agreement include payment and release of claims); *CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App.—Fort Worth 1999, no pet.) (holding settlement agreement that included terms of payment and statement that parties would execute mutual releases contained all material terms).

American Fisheries argues that, at the time the Rule 11 Agreement was made on the record before the Special Master, the parties were still in negotiations

regarding the payment of certain fees, such as the fees owed to a financial manager appointed by the trial court earlier in the litigation. However, the Rule 11 Agreement expressly stated that the parties agreed that National Honey would pay one confidential lump-sum settlement amount via wire transfer to American Fisheries, and in exchange, American Fisheries "will dismiss with prejudice all claims asserted or which could have been asserted in this cause of action against" National Honey and its agents. The Rule 11 Agreement also addressed American Fisheries' further obligations to release claims to funds held in connection with litigation in federal court in Illinois and in the Southern District of Texas, and it required that National Honey release all of its counter-claims against American Fisheries. The Rule 11 Agreement expressly provided, "No other sums of money shall be paid by American Fisheries, National Honey, Inc., Jun Yang or Lin [Huang] pursuant to the settlement agreement, other than the [confidential settlement amount] referred to in" the Agreement. American Fisheries further argues that the Agreement was incomplete as to the disposition of claims against certain third parties, but the Agreement addressed that concern, stating that National Honey and the individual representatives "will dismiss, as they deem fit, their claims asserted or which could have been asserted" against those third parties.

We conclude that National Honey conclusively established the existence of an enforceable Rule 11 agreement. *See* TEX. R. CIV. P. 11; *Shamrock Psychiatric*

*Clinic, P.A.*, 540 S.W.3d at 561. It set out its claims in a motion satisfying the procedural requirements for enforcement, including providing American Fisheries with proper notice of its claims and notice of the hearing, affording it an opportunity to respond to National Honey's claims. *See* TEX. R. CIV. P. 166a(c). Finally, the trial court conducted a hearing on this motion, permitting each side to supply additional evidence, which National Honey did, supplementing its "summary judgment evidence" on attorney's fees with billing records. The trial court further allowed each party an opportunity to present arguments on the motion, and American Fisheries' counsel asserted many of the arguments in that hearing that it now asserts on appeal, including its complaint that the Rule 11 Agreement was not enforceable and that attorney's fees were not justified.

American Fisheries argues that National Honey was not entitled to an award of attorney's fees. National Honey sought attorney's fees pursuant to Civil Practice and Remedies Code section 38.001 in connection with its enforcement of a written or oral contract. As discussed above, even when a party revokes its consent to a Rule 11 agreement, that agreement may still be enforceable in a breach of contract action, which can be decided on a summary basis provided that the party receives proper notice and a hearing. *See Padilla*, 907 S.W.2d at 461. "And as with other breach of contract actions, the unjustified breach of a settlement agreement exposes the breaching party to attorney's fees for

enforcement of the contract." *Garcia v. Harding*, 545 S.W.3d 8, 12 (Tex. App.—El Paso 2017, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8)).

We have already held that the trial court could have properly considered National Honey's motion to enforce as a motion for summary judgment. *See Bruess*, 2014 WL 3843517, at *3; *Bayway Servs., Inc.*, 106 S.W.3d at 160. We have also held that National Honey conclusively established the existence of an enforceable Rule 11 agreement.

National Honey asserted in its motion to enforce that it was entitled to attorney's fees incurred as a result of American Fisheries' failure to adhere to the parties' Rule 11 Agreement read into the record on January 18, 2017, and reduced to a written Settlement Agreement on February 20, 2017. American Fisheries' attorney agreed on the record to the settlement on January 18, 2017, and representatives of American Fisheries executed the Settlement Agreement on March 23, 2017. Nevertheless, American Fisheries did not provide this document to National Honey or otherwise tender performance under the parties' agreement, necessitating National Honey's motion to enforce. National Honey provided an affidavit of its counsel setting out the attorney's fees incurred in connection with its attempts to enforce the Rule 11 Agreement, and it also provided billing records supporting its claim. The trial court determined that the fees sought by National Honey were reasonable and necessary, and American Fisheries does not controvert

28

National Honey's attorney's fees evidence or argue that the amount of fees awarded was improper. Accordingly, we conclude that American Fisheries' "unjustified breach of a settlement agreement expose[d] [it] to attorney's fees for enforcement of the contract." *See Garcia*, 545 S.W.3d at 12 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015)).

We overrule American Fisheries' sole issue on appeal.

## Sanctions

In six issues on appeal, National Honey argues that the trial court erred in denying its request for sanctions against Yuen for alleged misconduct and misrepresentations.[4]

### A. Standard of Review

In reviewing a sanctions order, we are not bound by the trial court's findings of fact and conclusions of law; rather, we must independently review the entire record to determine whether the denial of a motion for sanctions was an abuse of the trial court's discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). We may reverse the trial court's ruling on a motion for sanctions only if the trial court acted without reference to any guiding rules and principles so that its ruling was arbitrary or unreasonable. *See id.* The trial court does not abuse

---

[4] American Fisheries filed a motion for involuntary dismissal of National Honey's cross-appeal. However, it failed to advance any meritorious grounds for dismissal; accordingly, we deny the motion.

29

its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam). The party moving for sanctions bears the burden of overcoming a presumption that pleadings and other papers are filed in good faith. *See id.*

National Honey sought sanctions against Yuen and his affiliated law firms under both Texas Rule of Civil Procedure 13 and Civil Practice and Remedies Code Chapter 10. A trial court may impose sanctions pursuant to Rule 13 if a pleading is groundless and brought in bad faith or for the purpose of harassment. *See* TEX. R. CIV. P. 13; *www.URBAN.INC v. Drummond*, 508 S.W.3d 657, 676 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Thielemann v. Kethan*, 371 S.W.3d 286, 294 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In determining whether a party acted in bad faith, we must be mindful that bad faith "is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes" and does not exist when a party "merely exercises bad judgment or is negligent." *Drummond*, 508 S.W.3d at 676 (citing *Thielemann*, 371 S.W.3d at 294). "A document is filed for the purpose of harassment if it is filed with the intent to annoy, alarm, and abuse another person." *Id.* "[T]he trial court must measure the party's conduct and examine the facts available to the party at the time the relevant document was signed." *Id.* (citing *Gomer v. Davis*, 419 S.W.3d 470, 478, 480

(Tex. App.—Houston [1st Dist.] 2013, no pet.)). The trial court must consider the acts or omissions of counsel and not merely the legal merit of a pleading or motion. *See id.*

"Our analysis of a motion for sanctions filed under Chapter 10 is the same as our review of a motion filed under Rule 13." *Drummond*, 508 S.W.3d at 675 (citing *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014)). Chapter 10 provides that "the signature of attorneys or parties on a pleading or motion constitutes a certificate by them that, to the best of their knowledge, information, and belief formed after a reasonable inquiry, the instrument is not being presented for an improper purpose," that it "is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," and that "there is evidentiary support for each allegation or contention." *Drummond*, 508 S.W.3d at 676–77 (reciting terms of TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2002)); *see also* TEX. R. CIV. P. 191.3(e) (addressing sanctions in discovery context and providing, "If the certification is false without substantial justification, the court may . . . impose . . . an appropriate sanction as for a frivolous pleading or motion under Chapter 10 of the Civil Practice and Remedies Code"). The party moving for sanctions under Chapter 10 must prove the pleading party's subjective state of mind. *See Drummond*, 508 S.W.3d at 677.

31

**B.    Analysis**

National Honey sought to have sanctions imposed against Yuen individually to address his conduct. It cited, among other alleged misrepresentations and improper conduct, the facts that Yuen (1) failed to notify the trial court or National Honey that American Fisheries "had actually signed the settlement agreement prepared by [National Honey's] counsel on March 23, 2017, seven days before [National Honey's] counsel filed the Motion to Enforce Rule 11 Settlement Agreement"; (2) argued that there was no Rule 11 Agreement after his client had signed the Settlement Agreement; and (3) "told the [trial court] and [National Honey] that [American Fisheries] 'accepted' the settlement on April 27, 2017, when clearly [American Fisheries] accepted the settlement on March 23, 2017." National Honey asserted that Yuen made these misrepresentations before the trial court in this case and that he made these or substantially similar misrepresentations in related litigation that was pending in federal court in Illinois and the Southern District of Texas.

Yuen testified at the sanctions hearing that, although his client had executed the Settlement Agreement on March 23, 2017, it did not authorize him to release that document and asked that he engage in further negotiations. The trial court did not make any written findings of fact or conclusions of law, but at the sanctions hearing, the trial court stated on the record:

One of [National Honey's] principal arguments in this motion is that Mr. Yuen failed to disclose that his client had previously signed the settlement agreement on March 23rd. This Court accepts Mr. Yuen's testimony that he was not authorized to release that document unless there were other items that were renegotiated. While that attempted renegotiation may have been improper, this Court has already issued attorney's fees for that and no additional sanctions will be issued on that.

National Honey's efforts to obtain sanctions for Yuen's conduct urge an interpretation of Yuen's failure to report his client's execution of the Settlement Agreement as early as March 23, 2017, and his attempts to renegotiate the terms of the Rule 11 Agreement as willful and deliberate bad acts. However, the law is clear that parties are entitled to withdraw their consent to settlement agreements, even if such revocation of consent might expose them to claims for breach of contract, as it did here. Furthermore, there was some evidence, in the form of Yuen's testimony, that, although his client had executed the Settlement Agreement on March 23, 2017, American Fisheries did not intend to agree to the Settlement Agreement at that time and instead wished to engage in further negotiation. The trial court stated that it "accept[ed] Mr. Yuen's testimony that he was not authorized to release that document unless there were other items that were renegotiated."

The trial court's determination that Yuen was acting on his client's instruction is not improper, as National Honey asserts in its first issue. Rather, the trial court's determination goes to whether Yuen's actions and representations to

the trial court demonstrated a "conscious doing of a wrong for dishonest, discriminatory, or malicious purposes" or whether Yuen "merely exercise[d] bad judgment or [was] negligent" in pursuing his client's wishes and interests. *See Drummond*, 508 S.W.3d at 676. Likewise, the propriety of the trial court's determination goes to Yuen's state of mind at the time he made the complained-of representations, and the record supports a conclusion that, although Yuen's efforts to renegotiate the settlement agreement might have ultimately been improper, they do not demonstrate a subjective state of mind indicating bad faith or harassment. *See id.* In either case, the record provides some evidence to support the trial court's determination that sanctions were not appropriate; and, thus, we cannot conclude that the trial court abused its discretion. *See id.* at 677.

In its fourth issue, National Honey argues that the trial court erred in refusing to award sanctions for conduct that occurred in federal courts. The trial court stated on the record at the sanctions hearing, "Finally, [National Honey's] argument that Mr. Yuen made improper and false statements to the Northern District of Illinois and the Southern District [of Texas] are arguments that should be addressed to those courts." National Honey cites to authorities indicating that a court *may* sanction conduct that occurs within another court, but its cites no authority, nor could we find any, indicating that such an award is mandatory under circumstances such as those presented here or that a trial court abuses its discretion

34

in failing to award such sanctions. *See Malone v. Abraham, Watkins, Nichols & Friend*, No. 01-99-01192-CV, 2004 WL 1120005, at *8 (Tex. App.—Houston [1st Dist.] May 20, 2004, no pet.) (mem. op.) (recognizing that "a trial judge presiding in his own court was without jurisdiction to impose sanctions on a party for violation of another court's order," but permitting imposition of sanctions "for committing the same conduct for which the court had just admonished him—filing frivolous lawsuits" and recognizing that "the court could impose sanctions on a party to prevent him from filing the same [frivolous] claims in another court").

In its fifth issue, National Honey further argues that the trial court erred in considering the attorney's fees award when deciding the sanctions issue. We disagree. In reviewing a sanctions order, we must independently review the entire record to determine whether the trial court abused its discretion. *See Jones*, 192 S.W.3d at 583. This includes reviewing other means employed by the trial court to correct any injustice or any additional expenses incurred as a result of improper conduct. The trial court here determined that the attorney's fees awarded in connection with the motion to enforce adequately compensated National Honey for the additional expenses and inconvenience it incurred as a result of American Fisheries' and Yuen's conduct following the parties' Rule 11 Agreement, and we cannot say that this was an abuse of the trial court's discretionary powers to sanction parties or their attorneys for purported misconduct. *See Villa*, 299 S.W.3d

35

at 97 (holding that trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision, and that party moving for sanctions bears burden of overcoming presumption that pleadings and other papers are filed in good faith).

Finally, in its second and third issues, National Honey asserts that the trial court erred in denying sanctions based on release language contained in the Settlement Agreement, which was finally executed between the parties on April 27, 2017. In its sixth issue, it asserts that the trial court erred by stating that National Honey lacked standing to seek sanctions for some aspects of Yuen's alleged misconduct. We observe, however, that, in reviewing a sanctions order, we are not bound by the trial court's findings of fact and conclusions of law. Rather, we must independently review the entire record to determine whether the trial court abused its discretion. *See Jones*, 192 S.W.3d at 583. We have reviewed the entire record, and, for the reasons set out above, we have determined that the trial court did not abuse its discretion in denying National Honey's request for sanctions. Accordingly, we need not address these particular findings or conclusions of the trial court. *See id.*

We overrule National Honey's issues on appeal.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.