

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00325-CV

**CCI GULF COAST UPSTREAM, LLC,**

**Appellant**

**v.**

**CIRCLE X CAMP COOLEY, LTD,**

**Appellee**

From the 82nd District Court
Robertson County, Texas
Trial Court No. 15-11-19,905-CV

## MEMORANDUM OPINION

In three issues, appellant, CCI Gulf Coast Upstream, LLC ("CCI"), challenges a judgment entered in favor of appellee, Circle X Camp Cooley, Ltd. ("Circle X"), with respect to two oil and gas leases. Specifically, CCI contends that Circle X does not own the two leases; that the free-gas clause contained in the leases is indefinite and unenforceable; and that the trial court erred by failing to address public-health and safety

issues associated with Circle X's enforcement of the free-gas clause. Because we overrule

all of CCI's issues, we affirm the judgment of the trial court.

## I.  BACKGROUND

This dispute involves the interpretation of a free-gas clause contained in two oil

and gas leases. Circle X alleged in its original petition that,

> [o]n or about April 1, 2004, Camp Cooley, Ltd., as Lessor, entered into an Oil and Gas Lease with Lancer Resources Company, as Lessee, wherein Camp Cooley, Ltd. leases approximately 439.65 acres of land located and situated in Robertson County, Texas for exploration or oil and gas interests. Lancer Resources Company subsequently assigned its interest in the Oil and Gas Lease to Red Willow Production, LLC via an *Assignment of Oil and Gas Leases* dated June 15, 2004 . . . .

> Thereafter, on or about June 9, 2006, Camp Cooley, Ltd., as Lessor, entered into an Oil and Gas Lease with Red Willow Production, LLC, as Lessee, wherein Camp Cooley, Ltd. leases approximately 640 acres of land located and situated in Robertson County, Texas for exploration of oil and gas interests . . . .

> On August 31, 2011, Plaintiff Circle X Camp Cooley, Ltd. purchased 10,631 acres of land in Robertson County, Texas (inclusive of both the 439.65 acres and the 640 acres set forth above) from CCR Restructuring, Ltd., formerly known as Camp Cooley, Ltd via a *Special Warranty Deed with Vendor's Lien*. As part of the purchase and conveyance, Plaintiff acquired all of Camp Cooley, Ltd.'s mineral interests in and to the 10,631 acres.

> Red Willow Production, LLC subsequently assigned its interest in both the foregoing Oil and Gas Leases to Defendant CCI Gulf Coast Upstream LLC.

In any event, the lease language in dispute provides as follows:

Lessor shall have the privilege, at Lessor's risk and expense, of using gas free of charge out of any gas not needed for operations hereunder from any well or wells on the leased premises. The free gas allowed hereunder may

be used by Lessor for any domestic or agricultural purposes on lands in the vicinity owned by Lessor, including, without limitation, use as fuel for irrigation pumps and machinery. Such gas shall be delivered to Lessor either at the outlet side of the separator, dehydrator, or Liquid Extraction Unit (if Lessee has such facilities in operation on the leased premises) or at the well; provided, however, at Lessor's election, such gas shall be delivered to Lessor at a point selected by Lessor on Lessor's premises, which point shall be on Lessee's flow line between the well and the point of delivery to the gas purchaser; provided further, however, if the point of delivery to the gas purchaser is at the well, then said point of delivery to Lessor, at Lessor's election, shall be on the gas purchaser's line between the well and the gas purchaser's tap where it delivers the gas to a third party for sale or transportation. Lessor shall transport such gas from the point of delivery to the point or points where the same is utilized. Title to the gas shall pass to Lessor at the delivery point and Lessor shall assume all costs, risk and liability of every nature whatsoever in connection with the taking, transportation and utilization of said gas from the delivery point.

Relying on this language, Circle X notified CCI in writing of its intent to utilize free gas for domestic and/or agricultural purposes on lands owned. CCI denied Circle X use of the free gas.

Circle X responded by filing suit, seeking a declaratory judgment, specific performance, and requesting damages for breach of contract and under a promissory-estoppel theory. CCI filed an original answer denying the allegations contained in Circle X's original petition. Thereafter, Circle X filed a motion for partial summary judgment, arguing that the leases are unambiguous; that Circle X is entitled to free gas under the leases; and that CCI breached the leases by refusing to provide Circle X with the requested free gas. CCI filed a response to Circle X's partial motion for summary

judgment, asserted a counterclaim for declaratory relief that the disputed lease language is void for indefiniteness, and filed its own motion for summary judgment.

The trial court granted Circle X's partial motion for summary judgment and denied CCI's summary-judgment motion. Subsequently, after a hearing that focused on damages, attorney's fees, and, to some extent, CCI's newly-raised standing argument, the trial court entered a final judgment, reiterating that Circle X is entitled to a declaration that the disputed lease language unambiguously allows it to make use of free gas and concluding that Circle X was entitled to $15,000 in damages on its breach-of-contract-claim and $31,520 in reasonable and necessary attorney's fees, as well as attorney's fees for appeal, costs of court, and post-judgment interest. The trial court noted that this judgment "finally disposes of all parties and any and all claims and as such shall constitute a final and appealable order." The trial court also entered findings of fact and conclusions of law. This appeal followed.

## II.     STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Our review is limited to consideration of the summary judgment evidence presented to the trial court. *See* TEX. R. CIV. P. 166a(c) (noting that no oral testimony may be considered in support of a motion for summary judgment). When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is

sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013).

Here, the parties moved for summary judgment on traditional grounds. The party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The burden of proof is on the movant and we resolve all doubts about the existence of a genuine issue of material fact against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215. In determining whether the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). A moving party who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508-09 (Tex. 2010).

When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have. *Merriman*, 407 S.W.3d at 248; *Fielding*, 289 S.W.3d at 848. If any of the summary judgment grounds are

meritorious, we must affirm the summary judgment. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

### III.    ANALYSIS

### A.    Standing and Capacity

In its first issue, CCI contends that Circle X lacks standing and capacity to bring suit because Circle X does not own the leases in question. More specifically, CCI asserts that Circle X claims title to the two oil and gas leases under a "Special Correction Special Warranty Deed" that purportedly identify the leases as "Exceptions to Conveyance and Warranty" in that deed.

At the outset, we note that CCI did not raise its standing and capacity arguments in its motion for summary judgment; rather, CCI first made these arguments in its third amended answer, which was filed after the trial court granted Circle X's partial motion for summary judgment and denied CCI's motion for summary judgment. As noted above, in granting Circle X's summary judgment, the trial court determined that the underlying leases are unambiguous; that Circle X is entitled to free gas under section 7 of the lease agreements; and that CCI breached the lease agreements by refusing to provide Circle X with the requested free gas.

Moreover, CCI's failure to raise capacity prior to the granting of the summary judgment is fatal because capacity is conceived as a procedural issue dealing with the procedural qualifications of a party to proceed with litigation, and capacity issues are

waived if not timely raised. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) ("Unlike standing, an argument that an opposing party does not have the capacity to participate in a suit can be waived."); *see also* TEX. R. CIV. P. 93(1) (requiring that a party file a verified pleading if it argues that "the plaintiff has not legal capacity to sue or that the defendant has not legal capacity to be sued."). Stated differently, because CCI did not raise its capacity contention prior to the trial court's summary-judgment order resolving liability under Circle X's contractual claims, CCI waived this contention. *See Lovato*, 171 S.W.3d at 849; *Nootsie*, 925 S.W.2d at 662; *see also* TEX. R. CIV. P. 93(1). Therefore, we are left with CCI's standing argument.

We recognize that standing is implicit in subject-matter jurisdiction and cannot be waived; thus, it can be raised at any time. *See Lovato*, 171 S.W.3d at 849; *see also Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000). However, Texas law is clear that a challenge to a party's privity of contract is a challenge to capacity, not standing. *See Transcon. Realty Investors, Inc. v. Wicks*, 442 S.W.3d 676, 679 (Tex. App.—Dallas 2004, pet. denied); *see also Nat'l Health Res. Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 129 (Tex. App.—Dallas 2014, no pet.) ("Whether [a party] was the assignee of the lease between [the signatory parties] is not an issue of standing. [Citation omitted.] Rather, it is a question of whether [the alleged assignee] can recover in the capacity in which it sued, an issue that goes to the merits of [the alleged assignee's] claim."). Whether a party is entitled to

sue on a contract is not truly a standing issue because it does not affect the jurisdiction of the court. *See Transcon. Realty Investors, Inc.*, 442 S.W.3d at 679; *see also Nat'l Health Res. Corp.*, 429 S.W.3d at 129. Instead, it is a decision on the merits. *See Transcon. Realty Investors, Inc.*, 442 S.W.3d at 679; *see also Nat'l Health Res. Corp.*, 429 S.W.3d at 129 ("'When it is established that a breach of contract plaintiff lacks entitlement to sue on a contract, the proper disposition may be summary judgment on the merits, but it is not dismissal for want of jurisdiction.'" (quoting *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 651 (Tex. App.—Dallas pet. denied))). While the question of whether a party is entitled to sue on a contract is often informally referred to as a question of "standing," it is not truly a standing issue because it does not affect jurisdiction. *See Transcon. Realty Investors, Inc.*, 442 S.W.3d at 679; *Nat'l Health Res. Corp.*, 429 S.W.3d at 129; *see also Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (stating that whether a landlord was a successor in interest to the original landlord was an issue of "capacity to sue," not "standing").

Here, CCI challenges Circle X's ability to file suit under the deed, which, in light of the aforementioned case law, is most aptly a capacity challenge, not a standing challenge. *See Transcon. Realty Investors, Inc.*, 442 S.W.3d at 679; *Nat'l Health Res. Corp.*, 429 S.W.3d at 129; *see also Nine Greenway Ltd.*, 875 S.W.2d at 787. Accordingly, based on the foregoing, we overrule CCI's first issue.

**B.** **Is the Free-Gas Clause Indefinite as to Quantity and Geographic Limitation?**

In its second issue, CCI argues that the free-gas clause is indefinite as to quantity and geographic limitation and, thus, is unenforceable. Specifically, CCI complains that the indefiniteness of the free-gas clause allows for Circle X to take up to 100% of the gas available for sale such that the well ceases to produce in paying quantities. CCI also contends that the terms "lands in the vicinity owned by the lessor" make it impossible to identify the lands covered by the free-gas clause. Additionally, CCI notes that the free-gas clause violates the statute of frauds.

> Unlike the trial court's obligation to resolve any ambiguity necessary to enforce a contract, indefiniteness in a contract makes the contract unenforceable. *See Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Wilson v. Wagner*, 211 S.W.2d 241, 243 (Tex. Civ. App.—San Antonio 1948, writ ref'd n.r.e.) ("[P]rovisions [that] are too indefinite and uncertain to reflect a meeting of the minds of the parties, [cannot] constitute an enforceable contract."). An indefinite contract results when a material or essential term, a term a party "would reasonable regard as [a] vitally important element[] of their bargain," is missing at the time the contract was formed. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *accord Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Stergiou*, 438 S.W.3d at 744; *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 622 (Tex. App.—San Antonio 1996, pet. denied) (holding contract unenforceable because it failed to contain all material and essential terms). The material or essential terms "must be sufficiently certain to define the rights of the parties." *See New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 123 (Tex. App.—Austin 2003, no pet.). A contract's material or essential terms are determined on a case-by-case basis. *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)).

> When construing a contract, a court "should be reluctant to hold a contract unenforceable for uncertainty." *Guzman v. Acuna*, 653 S.W.2d 315,

319 (Tex. App.—San Antonio 1983, pet. dism'd); *accord Estate of Eberling v. Fair*, 546 S.W.2d 329, 334 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.). Instead, it should construe the contract "in such a manner as to render performance possible rather than impossible." *Guzman*, 653 S.W.2d at 319. The court does not, however, possess "authority to interpolate essential elements in order to uphold the contract." *Id.* (citing *Dahlberg v. Holden*, 150 Tex. 179, 238 S.W.2d 699, 701 (1951)).

*Marx v. FDP, LP*, 474 S.W.3d 368, 376 (Tex. App.—San Antonio 2015, pet. denied); *see Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 455 (Tex. App.—Fort Worth 2009, pet. denied) ("Whether an agreement fails for indefiniteness is a question of law to be determined by the court." (citing *T.O. Stanley Boot Co.*, 847 S.W.2d at 222; *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 664 (Tex. App.—Dallas 2004, pet. denied))).

After reviewing the underlying lease agreements, we do not agree with CCI that the free-gas clauses are indefinite. Indeed, the lease agreements unambiguously provide that "Lessor shall have the privilege, at Lessor's risk and expense, of using gas free of charge *out of any gas not needed for operations hereunder . . . .*" (Emphasis added). The emphasized language limits Circle X's use of the free gas to surplus gas not needed for operations. The amount needed for operations at any given time is quantifiable and capable of determination. Thus, the amount of surplus gas available to Circle X is also quantifiable and not indefinite.

Next, we address CCI's complaint about the geographic scope of the free-gas clause. In arguing that the geographic scope is indefinite and unenforceable, CCI focuses on the following language of the lease agreements: "lands in the vicinity owned by the

lessor." CCI asserts that this language fails to adequately identify the boundaries of "vicinity." Once again, we disagree.

Applying its common and ordinary meaning, "vicinity" is defined as "the quality or state of being near . . . a surrounding area or district." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1316 (10th ed. 1993). A review of the language of the lease agreements shows that Circle X is limited to using the free gas only on lands "in the vicinity," which, by itself, could be considered to be too indefinite. However, the lease agreements provide additional language that limits Circle X's usage of the free gas to lands "in the vicinity" in which it *owns* and *only for domestic and agricultural purposes*. This language provides readily ascertainable geographic limits on Circle X's usage of the free gas. *See Thomas v. Thomas*, 767 S.W.2d 507, 508 (Tex. App.—Amarillo 1989, writ denied) (upholding the usage of a free-gas clause that provided the following: "Lessor shall have the privilege at his risk and expense of using gas from any gas well on said land for stoves and inside lights in the principal dwelling thereon out of any surplus gas not needed for operations hereunder").

We now address CCI's statute-of-frauds argument. Whether writings are sufficient to satisfy the statute of frauds is a question of law that we review de novo. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013). The statute of frauds requires that the writing furnish the data to identify the property interest with reasonable certainty. *See Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996) (citing *Morrow v. Shotwell*, 477

S.W.2d 538, 539 (Tex. 1972)). "To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." *Morrow*, 477 S.W.2d at 539. CCI's statute-of-frauds argument is premised on its assertion that the lease agreements were indefinite with regard to the essential terms of quantity and geographic scope. Because the statute of frauds requires the writings to identify the property interest with reasonable certainty, and because we have rejected all of CCI's indefiniteness arguments, we also necessarily reject CCI's statute-of-frauds argument. We overrule CCI's second issue.

## C. Public-Health and Safety Concerns

In its third issue, CCI asserts that the trial court erred by failing to address the danger to public health and safety regarding the alleged high hydrogen sulfide content of the gas produced from the relevant wells. CCI raised this contention in its response to Circle X's partial motion for summary judgment, arguing the following:

> Circle X's Motion for Partial Summary Judgment should be denied because the hydrogen sulfide content of the gas produced by the wells in question is such that the gas cannot be delivered under the free gas clause without creating a public health risk. A reasonably prudent operator would not allow gas with such high hydrogen sulfide content to be taken at the delivery point described in the leases, which point is before the treating facility that removes the hydrogen sulfide from the gas stream. The attached affidavit of Anthony Lowry Barto and the published government statistics regarding hydrogen sulfide demonstrate the potentially lethal hazard.

At no point in its argument did CCI identify this contention as negating an essential element of Circle X's breach-of-contract cause of action, nor did it identify this

CCI Gulf Coast Upstream, LLC v. Circle X Camp Cooley, Ltd. Page 12

contention as a particular affirmative defense with constituent elements that can be analyzed. Rather, CCI's contention is merely a blanket, public-policy argument seeking to contravene the parties' freedom of contract.

We recognize that there is a strong public policy in enforcing voluntary and knowing contracts. *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008); *see also Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007) (stating that courts should be "loathe" to judicially rewrite a contract's plain language). But the freedom of contract is "not unbounded"; parties do not have the right to enter contracts that violate another strong public policy as expressed through the legislature's statutes. *See Fairfield Ins. Co.*, 246 S.W.3d at 664; *Woolsey v. Panhandle Ref. Co.*, 131 Tex. 449, 455, 116 S.W.2d 675, 678 (1938) (disapproving of a contract that made the "wise provisions of the law . . . futile"); *see also Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 182 (Tex. App.—Fort Worth 2004, pet. denied) (en banc) (op. on reh'g) ("Courts look to state statutes and judicial decisions to determine public policy."). The appropriate test when considering whether a contract violates public policy is whether the tendency of the agreement is injurious to the public. *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 730 (Tex. App.—Fort Worth 2008, pet. dism'd); *see Westchester Fire Ins. Co.*, 152 S.W.3d at 182-83 (explaining that, in weighing a contract term against public policy, we should consider the strength of the public policy as manifested by legislation or

judicial decisions and the likelihood that a refusal to enforce the term will further that policy).

In its response to Circle X's partial motion for summary judgment, CCI failed to point to any statute, regulation, or opinion that enforcement of the free-gas clause would violate. And even though CCI's expert, Barto, referenced Railroad Commission rule 36 in his affidavit, CCI did not adequately explain how the free-gas clause violated that regulation or how enforcement of the free-gas clause violated public policy such that the strong public policy in enforcing voluntary and knowing contracts should be contravened. *See Fairfield Ins. Co.*, 246 S.W.3d at 664; *see also Fortis Benefits*, 234 S.W.3d at 649. Accordingly, we cannot say that CCI has raised a genuine issue of material fact as to Circle X's right to enforce the free-gas clause. We therefore overrule CCI's third issue.

## IV.  CONCLUSION

Having overruled all of CCI's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed September 26, 2018
[CV06]

